1 | Leonard M. Shulman - Bar No. 126349
2 | Melissa Davis Lowe - Bar No. 245521
**SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**
3 | 100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:     (949) 340-3400
4 | Facsimile:     (949) 340-3000
Email:         LShulman@shulmanbastian.com
5 |               MLowe@shulmanbastian.com

6 | Attorneys for Plaintiff, Chapter 7 Trustee

7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

10 |

| | |
|---|---|
| In re | Case No. 6:24-bk-16205-MH |
| CROWNCO, INC., | Chapter 7 |
| Debtor. | Adv. No. |
| ARTURO CISNEROS, solely in his capacity as the Chapter 7 trustee for the bankruptcy estate of Crownco, Inc. | **COMPLAINT FOR:** |
| Plaintiff, | (1)  **BREACH OF CONTRACT;**<br>(2)  **UNJUST ENRICHMENT;**<br>(3)  **AVOIDANCE AND RECOVERY OF INTENTIONAL FRAUDULENT TRANSFER;** |
| vs. | |
| PHILLIP JEREMIAH, LLC, a California limited liability company doing business as Precis Solar; and CHARLES MORRISON, an individual; | (4)  **AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFER;** |
| Defendants. | (5)  **DISALLOWANCE OF CLAIMS; AND**<br>(6)  **BREACH OF FIDUCIARY DUTY** |

Arturo Cisneros, solely in his capacity as the Chapter 7 Trustee ("Trustee" or "Plaintiff") for the bankruptcy estate ("Estate") of Crownco, Inc. ("Debtor") respectfully alleges as follows:

## STATE OF JURISDICTION AND VENUE

1.      This adversary proceeding is filed pursuant to Federal Rule of Bankruptcy Procedure 7001.  Plaintiff, as the Chapter 7 Trustee of the bankruptcy estate of the Debtor, has standing to bring this action pursuant to 11 U.S.C. § 323.

2.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Riverside Division entitled *In re Crownco Inc.*

3.      This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)- matters concerning the administration of the estate, (b)(2)(H)- proceedings to determine, avoid, or recover fraudulent conveyances; and (b)(2)(O)- other proceedings affecting the liquidation of the assets of the estate.  To the extent any related claims are determined not to be a core proceeding, the Plaintiff consents to an entry of final judgment and orders by the Bankruptcy Court.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1409, as this adversary proceeding arises under Title 11 or arises under or relates to a case under Title 11 which is pending in this District and does not involve a consumer debt less than $25,000.

5.      To the extent that Plaintiff asserts claims under 11 U.S.C. § 544, the Plaintiff is informed and believes and based thereon alleges that there exists in this case one or more creditors holding unsecured claims under 11 U.S.C. § 502 or are not allowable under 11 U.S.C. § 502(e), who can avoid the respective transfers as set forth hereinafter under California or other applicable law.

## PARTIES

6.      Plaintiff is the duly appointed, qualifying, and acting Chapter 7 Trustee for the Debtor's Estate.

7.      At all times herein mentioned, Debtor was a corporation organized and existing under the laws of California qualified to and doing business in the County of Riverside, State of California.

8.      Plaintiff is informed and believes and on that basis alleges that defendant Phillip Jeremiah LLC dba Precis Solar ("PJ LLC") was and is now a California corporation doing business in the County of Riverside, State of California.

9.      Plaintiff is informed and believes and on that basis alleges that defendant Charles Morrison ("Charles") was and is at all relevant times herein an individual residing in the County of Riverside, State of California.

10.     Plaintiff is informed and believes and on that basis alleges that Charles is the owner and principal of the Debtor.

11.     Plaintiff is informed and believes and on that basis alleges that defendant Charles's son, Charles Morrison III, is the owner and manager of PJ LLC.

12.     Plaintiff is informed and believes and on that basis alleges that PJ LLC owns a solar company called Precis Solar.

13.     Plaintiff is informed and believes and on that basis alleges that PJ LLC was formed on or about May 28, 2021.

14.     The contract upon which this action is based was entered into in the County of Riverside, State of California, and was to be performed in the County of Riverside, State of California, and the damages arising out the breach of said contract exceed the jurisdictional limits of any other court such that this action is brought before this court and the proper form and venue.

## STATEMENT OF FACTS

**Bankruptcy Case**

15.     The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 16, 2024 ("Petition Date").

16.     On March 4, 2025, the Debtor filed its Notice of Hearing on Motion and to Dismiss Chapter 11 Bankruptcy Case Pursuant to 11 U.S.C. Section 1112(b)(1) ("Dismissal Motion") [Docket No. 105].

17.     On March 11, 2025, the United States Trustee ("U.S. Trustee") filed an Opposition to the Dismissal Motion [Docket No. 109].

///

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

18.     On March 27, 2025, the Debtor filed its Amended Schedule A/B [Docket No. 116]. By the Amended Schedule A/B, Debtor added as an asset a note receivable (loan to Phillip Jeremiah LLC in the amount of $1,833.000.00) (the "PJ Note"). A true and correct copy of Amended Schedule A/B is attached hereto as **Exhibit 1.**

19.     On April 1, 2025, this Court entered its Order Converting Chapter 11 Bankruptcy Case Pursuant to 11.U.S.C. § 1112(b)(1) [Docket No. 119], thereby converting this case to one under Chapter 7.

20.     On April 2, 2025, a Notice of Appointment of Trustee; Acceptance of Appointment as Trustee was filed [Docket No. 120] thereby appointing Arturo Cisneros as the duly appointed, qualified and acting Chapter 7 Trustee for the Estate.

**Origin of Funds and Transfers**

21.     On December 19, 2024, the US Small Business Administration ("SBA") filed a proof of claim in this bankruptcy case asserting an unsecured claim in the amount of $2,004,663.90 and appearing on the Court's claims register as Claim No. 5 (the "SBA Claim").

22.     According to the SBA Claim, the SBA extended to the Debtor a COVID-19 Economic Injury Disaster Loan (COVID EIDL) (the "EIDL Loan"). The EIDL Loan was originally extended to the Debtor on May 13, 2020, in the principal amount of $150,000.00; on July 23, 2021, the amount was increased by an additional $200,000.00 for a total principal amount of $350,000.00; on July 23, 2021, the amount was again increased by an additional $1,483,000.00 for a total principal amount of $1,833,000.00.  A true and correct copy of the SBA Claim is attached hereto as **Exhibit 2.**

23.     As stated above, on or about May 28, 2021, PJ LLC was formed.

24.     Plaintiff is informed and believes and on that basis alleges, that near the end of 2021, PJ LLC purchased all assets of Precis Development, Inc. (Precis Development, Inc. was engaged in the sale and installation of solar panels to residential, commercial, and industrial customers under the name Precis Solar).  A copy of the Asset Purchase Agreement is attached hereto as **Exhibit 3.**

///

///

25.     At a Section 341(a) meeting of creditors held in June 2025, Charles stated that the Debtor transferred the sum of $1,833,000 to PJ LLC in approximately 2021 (collectively, the "Transfer").   He further stated that no loan agreement or other writing was memorialized to document the PJ Note.

26.     At a continued Section 341(a) meeting of creditors held on July 23, 2025, Charles stated that the Debtor used at least some of the funds it received from the EIDL Loan to make loans to his son, namely PJ LLC, to buy a solar company.

27.     Thus, the Plaintiff is informed and believes and on that basis alleges, and that at least part of the purchase price for the purchase of Precis Development, Inc. by PJ LLC was the PJ Note made by the Debtor to PJ LLC.

28.     The Debtor's Balance Sheet dated May 31, 2024 lists as an asset "Loans to PJ" in the amount of $1,833,000. A true and correct copy of the Balance Sheet is attached hereto as **Exhibit 4.**

## FIRST CAUSE OF ACTION

### (Breach of Contract)

### (As Against Defendant PJ LLC)

29.     Plaintiff hereby repeats, repleads, and incorporates herein by reference as though fully set forth herein at this point each and every allegation contained in Paragraphs 1 through 28 above.

30.     Beginning in 2021, Debtor and PJ LLC entered into an oral agreement whereby Debtor agreed to loan money to PJ LLC.

31.     Beginning in or about 2022, and continuing through the present, PJ LLC breached its agreement by failing to re-pay Debtor such sums.

32.     There is now due and owing the sum of $1,833,000.00 pursuant to the terms of the oral agreement between the Debtor and PJ LLC.

33.     Debtor has performed all conditions and covenants required of it under the oral agreement except those which have been excused by PJ LLC's failure to perform.

///

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5

34.     As a direct and proximate result of PJ LLC's acts as alleged herein, Debtor has suffered damages of at least $1,833,000.00, according to proof at time of trial.

**SECOND CAUSE OF ACTION**

**(Unjust Enrichment)**

**(As Against Defendant PJ LLC)**

35.     Plaintiff hereby repeats, repleads, and incorporates herein by reference as though fully set forth herein at this point each and every allegation contained in Paragraphs 1 through 34 above.

36.     PJ LLC received the benefits of the monies provided to PJ LLC by Debtor by possession and use thereof.

37.     In furnishing such monies to PJ LLC, Debtor was not acting as a volunteer.  PJ LLC accepted the benefits of the monies without payment in full to Debtor.

38.     PJ LLC has been unjustly enriched therefor and it would be inequitable for PJ LLC to be allowed to retain the benefits of the monies provided without being ordered to pay to the Plaintiff the sum of $1,833,000 together with interest at the legal rate, late charges and attorneys' fees according to proof.

**THIRD CLAIM FOR RELIEF**

**Avoidance and Recovery of Intentional Fraudulent Transfer**

**[11 U.S.C. § 544, 548(a)(1)(A), 550, 551; California Civil Code § 3439 et. seq.]**

**(As Against Defendant PJ LLC)**

39.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 28 and incorporates them in this Paragraph by reference.

40.     Plaintiff is informed, believes, and based thereon alleges that the Transfer was made on or within four (4) years of the Petition Date, but in no event longer than seven (7) years prior to the Petition Date.

41.     Plaintiff is informed, believes, and based thereon alleges that the Transfer was made either in anticipation of bankruptcy and/or to prevent the Debtor from paying its debts.

///

42.     Plaintiff is informed, believes, and based thereon alleges that the Transfer was made for the purpose of preventing a prospective bankruptcy trustee and/or creditors of the Debtor from obtaining the value of the Transfer.

43.     Plaintiff is informed, believes, and based thereon alleges that the Transfer was made with the actual intent to hinder, delay or defraud creditors, including Plaintiff.

44.     Plaintiff is informed, believes, and based thereon alleges that the Transfer was a fraudulent transfer avoidable under Bankruptcy Code Sections 544, 548 and California Civil Code Sections 3439.04, 3439.07, 3439.09.

45.     Plaintiff may recover, for the benefit of the Estate, the Transfer, or the value of the Transfer, from PJ LLC or from whom entity for whose benefit the Transfer was made, or any immediate or mediate transferee of such initial transferee pursuant to 11 U.S.C. §§ 550, 551.

## FOURTH CLAIM FOR RELIEF

### Avoidance and Recovery of Constructive Fraudulent Transfer

### [11 U.S.C. § 544, 548(a)(1)(B), 550, 551; Cal. Civ. Code § 3439 et. seq.]

### (As Against Defendant PJ LLC)

46.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 28 and incorporates them in this Paragraph by reference.

47.     Plaintiff is informed and believes and based thereon alleges that the Transfer was made: (i) for less than reasonably equivalent value to Debtor or any value, in exchange for said Transfer; (ii) while the Debtor was engaged or about to engage in a business or transaction for which the remaining assets were unreasonably small in relation to the business or the transaction; (iii) while the Debtor intended to incur, or believed or reasonably should have believed it would incur, debts beyond its ability to pay them as they became due; and/or (iv) by the time that the Debtor was insolvent and/or was rendered insolvent by virtue of the Transfer.

48.     Plaintiff is informed, believes, and based thereon alleges that the Transfer was a fraudulent transfer avoidable under Bankruptcy Code Sections 544, 548 and California Civil Code Sections 3439.04, 3439.05, 3439.07, 3439.09.

///

49.     Plaintiff may recover, for the benefit of the Estate, the Transfer, or the value of the Transfer, from PJ LLC or from whom entity for whose benefit the Transfer was made, or any additional subsequent transferee pursuant to 11 U.S.C. §§550, 551.

## FIFTH CLAIM FOR RELIEF

### Disallowance of Claims [11 U.S.C. § 502(d)]

### (As Against Defendant PJ LLC)

50.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 49 and incorporates them in this Paragraph by reference.

51.     Plaintiff is informed, believes, and based thereon alleges that PJ LLC received an avoidable transfer and PJ LLC is a party to which such transfer is recoverable pursuant to 11 U.S.C. §§ 550, 551.

52.     PJ LLC has not paid the amount or turned over any such property for which it is liable pursuant to the Bankruptcy Code.

53.     Pursuant to 11 U.S.C. §502(d), to the extent PJ LLC files a claim, such claim should be disallowed.

## SIXTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (As Against Defendant Charles)

54.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 49 and incorporates them in this Paragraph by reference.

55.     At all times relevant Charles was an officer, director and 100% owner of the Debtor.

56.     As an officer, director and owner of Debtor, Charles owed fiduciary duties to Debtor, and, upon Debtor's insolvency, to its creditors, including, but not limited to an undivided duty of loyalty, duty of care and a duty of disclosure.

57.     Charles willfully and intentionally breached his fiduciary duties that he owed to Debtor by acting against Debtor's and its creditors' interests by abusing his position to divert Debtor's funds to PJ LLC.

///

58.    Charles further willfully and intentionally breached his fiduciary duties that he owed to the Debtor and its creditors by using government funds earmarked for use only for working capital and normal operating expenses of the Debtor instead to fund his son's purchase of a solar company.

59.    The Trustee is informed and believes and thereon alleges that Charles committed additional intentional and/or negligent acts and omissions constituting additional breaches of his fiduciary duties owed to Debtor and its creditors.  The Trustee reserves his right to assert all such additional breaches of fiduciary duties and/or to amend this complaint to allege such additional breaches of fiduciary duties when they are discovered.

60.    The above acts and omissions by Charles constituted an abuse of his control of Debtor resulting in substantial corporate waste.

61.    The Trustee is informed and believes and thereon alleges that Charles's breaches of fiduciary duties were a substantial factor in causing Debtor's insolvency thereby proximately causing the demise of the viable going concern and proximately causing Debtor to be unable to pay its debts, thereby damaging Debtor and its creditors in an amount to be proven at trial.

62.    The Trustee is informed and believes and thereon alleges that Charles's breaches of fiduciary duty were committed maliciously, fraudulently and oppressively, in bad faith, and in conscious disregard of the rights of Debtor and its creditors within the meaning of California Civil Code section 3294.  Thus, the Trustee is entitled to recover punitive damages against Charles in an amount sufficient to punish and make an example of Defendants.

63.    Wherefore, the Trustee prays for judgment as hereinafter stated.

WHEREFORE, Plaintiff prays for a judgment against Defendants, and each of them, as follows:

ON THE THIRD AND FOURTH CLAIMS FOR RELIEF:

1.    For avoidance of the Transfer under 11 U.S.C. §§ 544, 548, 550 and/or Cal. Civ. Code §§ 3439.04, 3439.05, 3439.07;

2.    That the avoided Transfer be preserved for the benefit of the Estate under 11 U.S.C. §551.

///

1      ON THE FIFTH CLAIM FOR RELIEF:

2      1.      For disallowance of any claims filed by PJ LLC.

3      ON THE SIXTH CLAIM FOR RELIEF:

4      1.      For punitive and  exemplary damages in an amount to be determined at trial.

5      ON ALL CLAIMS FOR RELIEF:

6      1.      For general damages in the sum of at least $1,833,000, according to proof at time of

7  trial;

8      2.      For pre-judgment interest at the highest legal rate;

9      3.      For post-judgment interest at the highest legal rate;

10      4.      For attorneys' fees and costs of suit;

11      5.      For such other and further relief as the Court deems just and proper.

12                          **SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**

13

14  DATED:  September 8, 2025        By:        /s/ Melissa Davis Lowe

15                                          Leonard M. Shulman
                                            Melissa Davis Lowe
16                                          Attorneys for Arturo Cisneros,
                                            Chapter 7 Trustee and Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

# EXHIBIT 1

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Robert P. Goe – State Bar No. 137019<br>Reem J. Bello – State Bar No. 198840<br>GOE FORSYTHE & HODGES LLP<br>17701 Cowan, Suite 210<br>Irvine, CA 92614<br>rgoe@goeforlaw.com<br>rbello@goeforlaw.com<br><br>Telephone: (949) 798-2460<br>Facsimile:  (949) 955-9437<br><br>☐ Individual appearing without attorney<br>☒ Attorney for Debtor Crownco, Inc. | |

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION | |
|---|---|
| In re:<br><br>CROWNCO INC., a California corporation, | CASE NO.:  6:24-bk-16205-MH<br>CHAPTER:  11 |
| <br>Debtor(s) | **SUMMARY OF AMENDED SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS**<br>**[LBR 1007-1(c)]** |

A filing fee is required to amend Schedules D or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov). A supplemental master mailing list (do not repeat any creditors on the original) is required as an attachment if creditors are being added to the Schedule D or E/F.

Are one or more creditors being added? ☐ Yes ☒ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☒ Schedule A/B    ☐ Schedule C    ☐ Schedule D    ☐ Schedule E/F    ☐ Schedule G

☐ Schedule H    ☐ Schedule I    ☐ Schedule J    ☐ Schedule J-2    ☐ Statement of Financial Affairs

☐ Statement About Your Social Security Numbers    ☐ Statement of Intention    ☐ Master Mailing List

☐ Other (specify) _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and or statements are true and correct.

Date:  _3/21/25_

Charles E. Morrison
Debtor 1 Signature

_____
Debtor 2 (Joint Debtor) Signature (if applicable)

**NOTE**: It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

EXHIBIT 1

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Crownco, Inc.** |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **6:24-bk-16205-MH** |

[X] Check if this is an
amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property                    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:**   **Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **First Citizens Bank** | **Savings** | **9925** | $430.59 |
| 3.2. | **First Citizens Bank** | **Business Ckg** | **5797** | $18,177.11 |
| 3.3. | **First Citizens Bank** | **Payroll** | **6116** | $14,790.59 |

4.   **Other cash equivalents** *(Identify all)*

5.   **Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| $33,398.29 |
|---|

**Part 2:**   **Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
☑ Yes Fill in the information below.

7.   **Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

8.   **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

EXHIBIT 1

| Debtor | **Crownco, Inc.** | Case number *(if known)* | **6:24-bk-16205-MH** |
|---|---|---|---|
| | Name | | |

Description, including name of holder of prepayment
**Enterprise Fleet Management Credit Balance for returned leased vehicles that were sold during 01/24**

8.1.  **Acct# xxx575**                                                                        $40,686.34

9. **Total of Part 2.**

   Add lines 7 through 8. Copy the total to line 81.    | **$40,686.34** |

---

**Part 3:**    **Accounts receivable**

10. **Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
■ Yes Fill in the information below.

11. **Accounts receivable**

11a. 90 days old or less:      **280,641.07**    –    **52,314.85**    = ....    **$228,326.22**

                         face amount               doubtful or uncollectible accounts

11b. Over 90 days old:     **362,525.83**    –    **312,723.82**    =....    **$49,802.01**

                         face amount               doubtful or uncollectible accounts

12. **Total of Part 3.**

    Current value on lines 11a + 11b = line 12.  Copy the total to line 82.   | **$278,128.23** |

---

**Part 4:**    **Investments**

13. **Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

| | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|
| 14. **Mutual funds or publicly traded stocks not included in Part 1** | | |
| Name of fund or stock: | | |
| 14.1. | | |

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                               % of ownership

15.1.                                     %

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

---

EXHIBIT 1

| Debtor | Crownco, Inc. | Case number *(if known)* | 6:24-bk-16205-MH |
|---|---|---|---|
| | Name | | |

Describe:

16.1. _____    _____    _____

---

17.  **Total of Part 4.**
Add lines 14 through 16.  Copy the total to line 83.                                      [_____]

**Part 5:**    **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No.  Go to Part 6.
☐ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19.  **Raw materials** | | | | |
| _____ | _____ | _____ | _____ | _____ |
| 20.  **Work in progress** | | | | |
| _____ | _____ | _____ | _____ | _____ |
| 21.  **Finished goods, including goods held for resale** | | | | |
| _____ | _____ | _____ | _____ | _____ |
| 22.  **Other inventory or supplies** | | | | |
| _____ | _____ | _____ | _____ | _____ |

23.  **Total of Part 5.**
Add lines 19 through 22.  Copy the total to line 84.                                   [_____]

24.  **Is any of the property listed in Part 5 perishable?**
☐ No
☐ Yes

25.  **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
☐ No
☐ Yes. Book value _____   Valuation method _____   Current Value _____

26.  **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
☐ No
☐ Yes

**Part 6:**    **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No.  Go to Part 7.
☐ Yes Fill in the information below.

EXHIBIT 1

| Debtor | Crownco, Inc. | | | Case number *(if known)* | 6:24-bk-16205-MH |
|---|---|---|---|---|---|
| | Name | | | | |

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28.** **Crops–either planted or harvested** | | | |
| | | | |
| **29.** **Farm animals** *Examples: Livestock, poultry, farm-raised fish* | | | |
| | | | |
| **30.** **Farm machinery and equipment** *(Other than titled motor vehicles)* | | | |
| | | | |
| **31.** **Farm and fishing supplies, chemicals, and feed** | | | |
| | | | |
| **32.** **Other farming and fishing-related property not already listed in Part 6** | | | |
| | | | |

**33.** **Total of Part 6.**
Add lines 28 through 32. Copy the total to line 85.

_____

**34.** **Is the debtor a member of an agricultural cooperative?**
☐ No
☐ Yes. Is any of the debtor's property stored at the cooperative?
   ☐ No
   ☐ Yes

**35.** **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**
☐ No
☐ Yes. Book value _____ Valuation method _____ Current Value _____

**36.** **Is a depreciation schedule available for any of the property listed in Part 6?**
☐ No
☐ Yes

**37.** **Has any of the property listed in Part 6 been appraised by a professional within the last year?**
☐ No
☐ Yes

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39.** **Office furniture** | | | |

EXHIBIT 1

Debtor  **Crownco, Inc.**
<u>Name</u>

Case number *(if known)*  **6:24-bk-16205-MH**

40.  **Office fixtures**

41.  **Office equipment, including all computer equipment and
communication systems equipment and software
Equipment and supplies.
Desks
L-Shape : 7 @ $250
Large Office: 1
Stand Up: 4 @ $60
Chairs
Office: 19 @ $20
Cabinets
Metal: 5 @ $100
Wood: 1
Filing Cabinets
Large: 2 @ $175
Small: 1
Shelves:
Metal: 1 (large)
Wood: 5 @ $25.00
Tables:
Small: 2
Conference: 1
Fridges:
Large: 1
Small: 1
Small Appliances:
Microwave: 1
Coffee Maker: 1**

| | | | |
|---|---|---|---|
| | Unknown | Comparable sale | $3,345.00 |

**2019 Xerox AL 8055 Printer - $3,000
Computers : 3 @ $75
Monitors: 15 @ $35
Small Printers: 4 @ $40
Office Phones: 10 @ $30**

| | | | |
|---|---|---|---|
| | Unknown | Comparable sale | $4,210.00 |

42.  **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork;
books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card
collections; other collections, memorabilia, or collectibles

43.  **Total of Part 7.**
Add lines 39 through 42.  Copy the total to line 86.

| $7,555.00 |
|---|

44.  **Is a depreciation schedule available for any of the property listed in Part 7?**
■ No
☐ Yes

45.  **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 8: | **Machinery, equipment, and vehicles** |
|---|---|

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.  Go to Part 9.
■ Yes Fill in the information below.

Official Form 206A/B            Schedule A/B Assets - Real and Personal Property            page 5

EXHIBIT 1

| Debtor | **Crownco, Inc.** | | | Case number *(if known)* **6:24-bk-16205-MH** |
|---|---|---|---|---|
| | Name | | | |

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|
| **47.** **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1. **2019 Nissan Frontier**<br>**License No. 06864R2**<br>**Mileage: 127,049** | Unknown | Comparable sale | **$11,174.00** |
| 47.2. **2019 Nissan Frontier**<br>**License No. 41872V2**<br>**Mileage: 96,595** | Unknown | Comparable sale | **$13,078.00** |
| 47.3. **2019 Nissan Cargo 1500**<br>**License No: 88865V2**<br>**Mileaage: 133,195** | Unknown | Comparable sale | **$8,792.00** |
| 47.4. **2019 Nissan Cargo 1500**<br>**License No: 90837V2**<br>**Mileaage: 117,852** | Unknown | Comparable sale | **$10,313.00** |
| 47.5. **2019 Nissan Cargo 1500**<br>**License No: 88882V2**<br>**Mileaage: 124493** | Unknown | Comparable sale | **$9,700.00** |
| 47.6. **2019 Nissan Cargo 1500**<br>**License No: 98604X2**<br>**Mileaage: 59201** | Unknown | Comparable sale | **$18,251.00** |
| **48.** **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors,<br>floating homes, personal watercraft, and fishing vessels | | | |
| **49.** **Aircraft and accessories** | | | |
| **50.** **Other machinery, fixtures, and equipment (excluding farm**<br>**machinery and equipment)**<br>**Five Iphone 13 -** | Unknown | Comparable sale | **$1,725.00** |
| **Three Ipad Pro** | Unknown | Comparable sale | **$1,500.00** |
| **One - Galaxy S20 Plus 5G** | Unknown | Comparable sale | **$198.00** |
| **Dryers: 40 @$35**<br>**De-Humidifiers: 4 @$60**<br>**Ladders: 3 @ $45**<br>**Wheel Barrows: 2 @$40** | Unknown | Comparable sale | **$1,855.00** |

| **51.** **Total of Part 8.** | **$76,586.00** |
|---|---|
| Add lines 47 through 50.  Copy the total to line 87. | |

Schedule A/B Assets - Real and Personal Property

EXHIBIT 1

| Debtor | Crownco, Inc. | Case number *(If known)* | 6:24-bk-16205-MH |
|---|---|---|---|
| | Name | | |

**52.** **Is a depreciation schedule available for any of the property listed in Part 8?**
☑ No
☐ Yes

**53.** **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
☑ No
☐ Yes

<table>
<tr><td>Part 9:</td><td colspan="5"><strong>Real property</strong></td></tr>
</table>

**54.** **Does the debtor own or lease any real property?**

☑ No.  Go to Part 10.
☐ Yes Fill in the information below.

**55.** **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1. | | | | |

**56.** **Total of Part 9.**
Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
Copy the total to line 88.

_____

**57.** **Is a depreciation schedule available for any of the property listed in Part 9?**
☐ No
☐ Yes

**58.** **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
☐ No
☐ Yes

<table>
<tr><td>Part 10:</td><td colspan="4"><strong>Intangibles and intellectual property</strong></td></tr>
</table>

**59.** **Does the debtor have any interests in intangibles or intellectual property?**

☐ No.  Go to Part 11.
☑ Yes Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60.** **Patents, copyrights, trademarks, and trade secrets** | | | |
| **61.** **Internet domain names and websites**<br>crownco.biz | Unknown | N/A | $50.00 |
| **62.** **Licenses, franchises, and royalties** | | | |

Official Form 206A/B    Schedule A/B Assets - Real and Personal Property    page 7

EXHIBIT 1

| Debtor | Crownco, Inc. | Case number *(if known)* | 6:24-bk-16205-MH |
|---|---|---|---|
| | Name | | |

| | | | |
|---|---|---|---|
| State of California Contractors License.  Not transferable. No retail value. | Unknown | N/A | $0.00 |

63. **Customer lists, mailing lists, or other compilations**

64. **Other intangibles, or intellectual property**

65. **Goodwill**

66. **Total of Part 10.**                                                                                          $50.00
Add lines 60 through 65. Copy the total to line 89.

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107**?**
☑ No
☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
☑ No
☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
☑ No
☐ Yes

| Part 11: | All other assets |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
☑ Yes Fill in the information below.

Current value of debtor's interest

71. **Notes receivable**
Description (include name of obligor)
**Loan to: Phillip Jeremiah LLC, 36625 Kevin Road, Suite 147, Wildomar, CA 92595**    1,833,000.00  -  0.00  =
Total face amount        doubtful or uncollectible amount

**[ADDED]**                                                                                          $1,833,000.00

72. **Tax refunds and unused net operating losses (NOLs)**
Description (for example, federal, state, local)

73. **Interests in insurance policies or annuities**

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

76. **Trusts, equitable or future interests in property**

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership
**Crownco Franchise System a State of Florida LLC. In the process of closing LLC has not performed business.**                                                                                          $0.00

EXHIBIT 1

| Debtor | **Crownco, Inc.** | | Case number *(If known)*  **6:24-bk-16205-MH** |
|---|---|---|---|
| | Name | | |

78.  **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.

$1,833,000.00

79.  **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No
☐ Yes

EXHIBIT 1

| Debtor | **Crownco, Inc.** | Case number *(If known)* | **6:24-bk-16205-MH** |
|---|---|---|---|
| | Name | | |

Part 12: **Summary**

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $33,398.29 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $40,686.34 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $278,128.23 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $7,555.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $76,586.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*....................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $50.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $1,833,000.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $2,269,403.86 | + 91b.  $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $2,269,403.86 |

EXHIBIT 1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

17701 Cowan, Lobby D, Suite 210, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **SUMMARY OF AMENDED SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS [LBR 1007-1(c)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 03/27/2025         , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) 03/27/2025         , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒   Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)                     , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 03/27/2025 | Arthur E. Johnston | /s/ Arthur E. Johnston |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

**ATTACHED PAGE TO**

**PROOF OF SERVICE OF DOCUMENT**

1. <u>TO BE SERVED BY THE COURT VIA NOTICEOF ELECTRONIC FILING (NEF)</u>:

- **Reem J Bello**    rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Jennifer Witherell Crastz**    jcrastz@hrhlaw.com
- **Abram Feuerstein**    abram.s.feuerstein@usdoj.gov
- **Robert P Goe**    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.c
  om;ajohnston@goeforlaw.com
- **Everett L Green**    everett.l.green@usdoj.gov
- **Anne C Manalili**    anne.manalili@sba.gov
- **Cameron C Ridley**    wcvbees@gmail.com
- **Jessica M. Simon**    jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **Gregory A Thyberg**    greg@thyberglaw.com
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov
- **Michael A Wallin**    mwallin@wallinrussell.com

2.    <u>SERVED BY UNITED STATES MAIL</u>:

MAILING LIST FOLLOWS

EXHIBIT 1

CTI III, LLC
c/o Wallin & Russell LLP
26000 Towne Centre Drive
Suite 130
Foothill Ranch, CA 92610-3444

Centerstone SBA Lending, Inc.
c/o Hemar, Rousso & Heald, LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436-2802

Crownco, Inc.
P O Box 890802
Temecula, CA 92589-0802

First-Citizens Bank & Trust Company
c/o Ballard Spahr LLP
2029 Century Park East
Suite 1400
Los Angeles, CA 90067-2915

(p)U S  SMALL BUSINESS ADMINISTRATION
312 N SPRING ST 5TH FLOOR
LOS ANGELES CA 90012-4701

,

ADP Payroll Services
P.O Box 31001-1874
Pasadena Ca 91110-1874

Alas Company LLC
c/o Grupo Glemka
PO Box 8617
Northridge, CA 91327-8617

Blank Rome
717 Texas Ave, Ste 1400
Houston, TX 77002-2776

CDN
847 Sumpter Rd
#5005
Belleville, MI 48111-4905

CTI III, LLC d/b/a Corporate Tax Incentives
c/o Wallin & Russell LLP
26000 Towne Centre Drive, Suite 130
Foothill Ranch, CA 92610-3444

CTI III, LLC dba Corporate Tax Inc.
1720 Prairie City Rd.
Folsom, CA 95630-4044

California Department of Fee & Tax
Account Information Group, MIC:29
P.O. Box 942879
Sacramento, CA 94279-0029

Callahan, Thompson, Sherman, Caudil
2601 Main St
Suite 800
Irvine, CA 92614-4230

Capstone Law APC
1875 Century Park East, Ste 1000
Los Angeles, CA 90067-2533

Carol Carmel
66017 10th Street
Desert Hot Springs, CA 92240-2307

Cellco Partnership d/b/a Verizon  Wireless
William M Vermette
22001 Loudoun County PKWY
Ashburn, VA 20147-6122

Centerstone
700 S. Flower Street
Suite 850
Los Angeles CA 90017-4121

Centerstone SBA Lending, Inc.
c/o Hemar, Rousso & Heald, LLP
Attn: Jennifer Witherell Crastz
15910 Ventura Blvd., 12th Floor
Encino, CA 91436-2813

Charles Morrison
c/o Crownco
43234 Business Park Drive
Temecula, CA 92590-3604

Coast Professional
P.O. Box 246
Geneseo, NY 14454-0246

Deprofunds Inc. Vert Environmental
4715 Viewridge Ave.
Suite 210
San Diego, CA 92123-1680

Dynamic Environmental
PO Box 27430
Santa Ana, CA 92799-7430

Employment Development Department
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Enterprise
1400 N. Kellog Dr
Ste G
Anaheim, CA 92807-1984

Enterprise FM Trust
dba Enterprise Fleet Management
BNY Mellon Trust of Delaware
301 Bellevue Prkwy 3rd Floor
Wilmington, DE 19809-3705

Esteban Acosta
513 Mandarin Way
Fallbrook, CA 92028-4708

Esteban Acosta
Attn: Capstone Law APC
1875 Century Park East, Ste 1000
Los Angeles, CA 90067-2533

Esteban Acosta as Class Rep
Attn: Capstone Law APC
1875 Century Park East, Ste 1000
Los Angeles, CA 90067-2533

EXHIBIT 1

Esteban Acosta as PAGA
Attn: Capstone Law APC
1875 Century Park East, Ste 1000
Los Angeles, CA 90067-2533

PO Box 639
Portland, ME 04104-0639

Felahy Trial Lawyers
555 S Hope St, Ste 2655
Los Angeles, CA 90071

First Citizen Bank
239 Fayetteville Street
Raleigh, NC 27601-1309

First-Citizens Bank & Trust Company
c/o Michael Myers, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Franchise Tax Board
Bankruptcy Section, MS: A-340
P. O. Box 2952
Sacramento, CA 95812-2952

GB Collections (Kaiser Permanente)
1253 Haddonfield Berlin Rd
Voorhees, NJ 08043-4847

Ganahl Lumber
1220 E Ball Rd
Anaheim, CA 92805-5993

Gibbs & Fuerst, LLP
2247 Sam Doegp Ave
Suite 137
San Diego, CA 92110

Gibbs & Fuerst, LLP
41880 Kalmia Street
Suite 160
Murrieta, CA 92562-8837

Healthnet
PO Box 9103
Van Nuys, CA 91409-9103

Home Depot Commercial by Citi
PO Box 790340
St. Louis, MO 63179-0340

Intelligent Direct, Inc.
10 First St PO Box 119
Wellsboro, PA 16901-0119

Internal Revenue Service
P. O. Box 7346
Philadelphia, PA 19101-7346

J&B Materials
PO Box 847609
Los Angeles, CA 90084-7609

James O'Connar
10256 Princess Sarit way
Santee, CA 92071-1277

Jason Perdomo
934 North Santa Fe Avenue
Vista, CA 92083-3636

Joel Parker
1110 Petree Street, #16
El Cajon, CA 92020-2400

Joens & Joens
2201 Dupont Dr.
Suite 820
Irvine, CA 92612-7508

Joshua Eugene Trcka
34590 Orange Street
Wildomar, CA 92595-8944

Lennar Corporation
c/o Jennifer Lee
Coporate Creations Network
7801 Folsom Blvd., #202
Sacramento, CA 95826-2620

Lowe's
PO Box 669821
Dallas, TX 75266-0775

Peterman Lumber
10330 Elm Ave
Fontana, CA 92337-7394

Pro Flo A/C & Heating
42166 Remington Ave
Temecula, CA 92590-2547

Prudhomme
43460 Ridge Park Dr
Suite 220
Temecula, CA 92590-3600

REEL Lumber Service
1321 N. Kraemer Blvd
Anaheim, CA 92806-1402

Robert Yujin
700 S. Flower Street
Suite 850
Los Angeles, CA 90017-4121

Ronald J. Cervi
10386 Vera Cruz Street
San Diego, CA 92124-1319

Shuan Chisolm
30300 Antelope Road
Apartment #2217
Menifee, CA 92584-9579

South Coast Foam
41228 Raintree Ct
Murrieta, CA 92562-7089

EXHIBIT 1

(p)SOUTHERN CALIFORNIA EDISON COMPANY
1551 W SAN BERNARDINO ROAD
COVINA CA 91722-3407

Steve Mesias
8531 Stonegate Drive
Rancho Cucamonga, CA 91730-7127

(p)T MOBILE
C O AMERICAN INFOSOURCE LP
4515 N SANTA FE AVE
OKLAHOMA CITY OK 73118-7901

Timothy L. Joens
Joens & Joens, APC
2201 Dupont Drive, Suite 280
Irvine, CA 92612-1515

U.S. Small Business Administration
10737 Gateway West, #300
El Paso, TX 79935-4910

United States Trustee (RS)
3801 University Avenue, Suite 720
Riverside, CA 92501-3255

Verizon Business
P.O. Box 489
Newark, NJ 07101-0489

Vista Paint
2020 E Orangethorpe Ave
Fullerton, CA 92831-5327

Visual Edge
1801 W. Olympic Blvd
File 2584
Pasadena, CA 91199-2594

Wex Health
PO Box 9528
Fargo, ND 58106-9528

Xerox
P.O. Box 202882
Dallas, TX 75320-2882

Reem J Bello
Goe Forsythe & Hodges LLP
17701 Cowan
Building D
Ste 210
Irvine, CA 92614-6840

EXHIBIT 1

# EXHIBIT 2

**Fill in this information to identify the case:**

Debtor 1    Crownco, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Central     District of California
                                                        (State)

Case number    6:24-bk-16205-MH

---

## Official Form 410

# Proof of Claim

12/24

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | |
| --- | --- |
| 1. **Who is the current creditor?** | U.S. Small Business Administration (Federal government agency) <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor   SBA |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> U.S. Small Business Administration/Office of General Counsel - LADO <br> Name <br> 312 North Spring Street, Floor 5 <br> Number     Street <br> Los Angeles     CA     90012 <br> City       State       ZIP Code <br><br> Contact phone   213-634-3875 <br> Contact email   anne.manalili@sba.gov <br><br> Uniform claim identifier (if you use one): <br> __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | **Where should payments to the creditor be sent?** (if different) <br><br> U.S. Small Business Administration/Denver Finance Center <br> Name <br> 721 19th Street <br> Number     Street <br> Denver     CO     80202 <br> City       State       ZIP Code <br><br> Contact phone   213-634-3875 <br> Contact email   anne.manalili@sba.gov |
| 4. **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____ <br>                                                       MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

**EXHIBIT 2**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __7__ __4__ __0__ __8__

**7. How much is the claim?** $_____2,004,663.90. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☐ No

☑ Yes. Identify the property: All money owed by the United States of America

EXHIBIT 2

| | | Amount entitled to priority |
|---|---|---|
| **12.** **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   12/19/2024
                  MM / DD / YYYY

/s/ Anne C. Manalili
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Anne C. Manalili | | |
| | First name | Middle name | Last name |
| Title | District Counsel | | |
| Company | U.S. Small Business Administration | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 312 North Spring Street, Floor 5 | | |
| | Number     Street | | |
| | Los Angeles | CA | 90012 |
| | City | State | ZIP Code |
| Contact phone | 213-634-3875 | Email | anne.manalili@sba.gov |

**EXHIBIT 2**

*In Re: Crownco, Inc.*

**Bankruptcy Case Number: 6:24-bk-16205-MH**

**Petition Date: 10.16.2024**

**<u>Addendum to Proof of Claim of the U.S. Small Business Administration</u>**

**Amount due\*: $2,004,663.90**

| | | |
|---|---|---|
| Unpaid Principal Balance as of Petition Date: | $ | 1,823,995.00 |
| Unpaid accrued interest to Petition Date: | $ | 180,668.90 |
| TOTAL\* | $ | 2,004,663.90 |

| | |
|---|---|
| **Interest Rate at Default:** | **3.750%** |
| **Per Diem Interest:** | **$187.40** |

[\*Plus all applicable <u>post-petition</u> accrued interest at the applicable interest rate provided for in the loan documents plus all other applicable charges and advances incurred as allowed under the Bankruptcy Code and the loan documents, less any funds received post-petition. Additionally, all damages, fines, and/or other penalties (which amounts are not yet liquidated) which may be discovered after an investigation is completed and may be owed by Debtor shall be added to the claim amount.]

The U.S. Small Business Administration is an agency of the United States. This claim reflects the known liability of the debtor to this agency. The United States reserves the right to amend this claim to assert subsequently discovered liabilities, including but not limited to all statutory claims.

The filing of this Proof of Claim is not intended to: (a) waive the right to seek withdrawal of the reference with respect to the subject matter of the Proof of Claim, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this proceeding against or otherwise involving SBA; or (b) constitute an election of remedies that waives or otherwise affects any other remedy.

SBA expressly reserves the right to amend, modify, and/or supplement this Proof of Claim at any time, for whatever reason.

SBA expressly reserves all rights of setoff and recoupment that the United States may have, including any right under 11 U.S.C. § 553 to setoff, against the claims herein, debts owed (if any) to Debtor by the United States, or any federal agency.

This claim is based upon a COVID-19 Economic Injury Disaster Loan (COVID EIDL). This loan was originally extended on **<u>May 13, 2020</u>**, in the principal amount of **<u>$150,000.00</u>**. On **<u>July 23, 2021</u>**, the amount was increased by an additional $200,000.00 for a total principal amount of **<u>$350,000.00</u>**. On **<u>July 23, 2021</u>**, the amount was again increased by an additional $1,483,000.00 for a total principal amount of **<u>$1,833,000.00</u>**.

There are security agreements and a UCC-1 Financing Statement associated with the COVID EIDL, but the value of the personal property collateral and existence of senior lienholders renders the claim unsecured.

Due to the issuance of SBA Procedural Notice 5000-830558 (March 15, 2022), the monthly payments on this COVID EIDL were deferred to **<u>November 15, 2022</u>**, however interest continued to accrue during the deferment period.

EXHIBIT 2

## ADDITIONAL PAYMENT INSTRUCTIONS

**For check payments via mail delivery (including overnight delivery);**

1) Please include loan number on the check(s) and send to the following:

> U.S. Small Business Administration
> Denver Finance Center #7988
> 721 19th St.
> Denver, CO 80202

2) For payments on multiple loans, please send separate checks

**For Online Payments:**

**Please pay via the MySBA Portal.** This is the best and recommended method to pay. Borrowers can view their loan details and make payments via ACH and the processing times are quicker.  **Please have the borrower go to: https://lending.sba.gov and create an account.**

EXHIBIT 2



# SBA Procedural Notice

**TO:** All SBA Employees

**CONTROL NO.:** 5000-830558

**SUBJECT**: Additional 6-Month Deferment for SBA COVID-19 Economic Injury Disaster Loans

**EFFECTIVE:** March 15, 2022

The purpose of this Notice is to grant an additional 6-month deferment of principal and interest payments to SBA's existing[1] COVID-19 Economic Injury Disaster Loan (EIDL) borrowers (COVID EIDL Borrowers).

Due to the continued adverse effects of the COVID-19 emergency, SBA is extending the previous deferments granted to COVID EIDL Borrowers to provide an additional 6-month deferment of principal and interest payments on their COVID EIDLs. This 6-month deferment extension is effective for all COVID EIDLs approved in calendar years 2020, 2021 and 2022. COVID EIDLs have a total deferment of 30 months from the date of the Note.[2]

**COVID-EIDL Borrowers should be advised that:**
- Interest will continue to accrue on the loans during the deferment.
- Partial or full payments may be made (recommended to use www.pay.gov) during the deferment but are not required.
- SBA will not be sending monthly SBA Form 1201 payment notices (although SBA will send regular payment reminders).
- Account balances and payment due dates are accessible in the SBA Capital Access Financial System (CAFS). Borrowers may learn how to set up an account in the CAFS system by logging in at https://caweb.sba.gov/cls/dsp_login.cfm.
- Deferments may result in balloon payments.
- The deferment will not stop any established Preauthorized Debit (PAD) or recurring payments on the loan. COVID EIDL Borrowers with an SBA established PAD must contact their SBA servicing center to stop recurring payments during the extended deferment period. COVID EIDL Borrowers that have established a PAD through

---

[1] Originated in calendar years 2020, 2021 or through the date of this Notice in 2022, and all COVID EIDLs originated in 2022 after the date of this Notice based on applications received by December 31, 2021.

[2] This additional deferment does not apply to non-COVID disaster home and business loans.

**PAGE 1 of 2**  **EXPIRES:**  **3-1-23**

SBA Form 1353.3 (4-93) MS Word Edition; previous editions obsolete

Must be accompanied by SBA Form 58

EXHIBIT 2

Pay.Gov or any other bill pay service are responsible for terminating recurring payments during the extended deferment period.

- After the deferment period ends, COVID EIDL Borrowers will be required to make regular principal and interest payments beginning 30 months from the date of the Note.

Questions regarding this Notice[3] should be directed to:

      U.S. Small Business Administration
      COVID-19 EIDL Customer Service Center
      (Toll Free) 833-853-5638

Patrick  Kelley
Associate Administrator
Office of Capital Access

---

[3] See also SBA Procedural Notices 5000-20012, 5000-20072, and 5000-807838.

**PAGE 2 of 2**                **EXPIRES:**   **3-1-23**

SBA Form 1353.3 (4-93) MS Word Edition; previous editions obsolete

Must be accompanied by SBA Form 58

EXHIBIT 2

## U.S. Small Business Administration

Economic Injury Disaster Loan

## <u>LOAN AUTHORIZATION AND AGREEMENT</u>

Date: 05.13.2020 (Effective Date)

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan (SBA Loan # ... 7408) to Crownco, Inc. (Borrower) of 26697 PIERCE CIR MURRIETA California 92562 in the amount of one hundred and fifty thousand and 00/100 Dollars ($150,000.00), upon the following conditions:

### PAYMENT

- Installment payments, including principal and interest, of $731.00 <u>Monthly</u>, will begin <u>Twelve (12) months</u> from the date of the promissory Note. The balance of principal and interest will be payable <u>Thirty (30) years</u> from the date of the promissory Note.

### INTEREST

- Interest will accrue at the rate of <u>3.75</u>% per annum and will accrue only on funds actually advanced from the date(s) of each advance.

### PAYMENT TERMS

- Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

- Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

### COLLATERAL

- For loan amounts of greater than $25,000, Borrower hereby grants to SBA, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described herein to secure payment and performance of all debts, liabilities and obligations of Borrower to SBA hereunder without limitation, including but not limited to all interest, other fees and expenses (all hereinafter called "Obligations"). The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

- For loan amounts of $25,000 or less, SBA is not taking a security interest in any collateral.

SBA Form 1391 (5-00)                                                                                      Ref 50 30

EXHIBIT 2

## REQUIREMENTS RELATIVE TO COLLATERAL

- Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in the "Collateral" paragraph hereof without the prior written consent of SBA.

- Borrower will neither seek nor accept future advances under any superior liens on the collateral securing this Loan without the prior written consent of SBA.

## USE OF LOAN PROCEEDS

- Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

## REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

- Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement. Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

- Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA. The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred. To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

- Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

- Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered. The SBA will not consider a request for a loan increase received more than **two (2)** years from the date of loan approval unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

## DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

- **Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement**. By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement. The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

## COMPENSATION FROM OTHER SOURCES

- Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources. Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3)

EXHIBIT 2

claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

- Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

- Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

- SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits. SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

## DUTY TO MAINTAIN HAZARD INSURANCE

- Within 12 months from the date of this Loan Authorization and Agreement the Borrower will provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on all items used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## BOOKS AND RECORDS

- Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first. Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

- Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require: (1) inspections and audits of any books, records and paper in the custody or control of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

- Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial statements.

- Upon written request of SBA, Borrower will accompany such statements with an 'Accountant's Review Report' prepared by an independent public accountant at Borrower's expense.

- Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

SBA Form 1391 (5-00)                                                                Ref 50 30

EXHIBIT 2

## LIMITS ON DISTRIBUTION OF ASSETS

- Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

## EQUAL OPPORTUNITY REQUIREMENT

- If Borrower has or intends to have employees, Borrower will post SBA Form 722, Equal Opportunity Poster (copy attached), in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

## DISCLOSURE OF LOBBYING ACTIVITIES

- Borrower agrees to the attached Certification Regarding Lobbying Activities

## BORROWER'S CERTIFICATIONS

Borrower certifies that:

- There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

- No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5 Business Disaster Loan Application'; SBA Form 3501 COVID-19 Economic Injury Disaster Loan Application; or SBA Form 159, 'Compensation Agreement'. All fees not approved by SBA are prohibited.

- All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

- No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

- Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

- Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application. All fees not approved by SBA are prohibited. If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area. Compensation cannot be contingent on loan approval. In addition, compensation must not include any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred. Compensation must not include

EXHIBIT 2

charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1. **If the compensation exceeds $500 for a disaster home loan or $2,500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website.**

- Borrower certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

CIVIL AND CRIMINAL PENALTIES

- Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

- If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable. SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

- A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

DISBURSEMENT OF THE LOAN

- Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

- Disbursements may be made in increments as needed.

- Other conditions may be imposed by SBA pursuant to general requirements of SBA.

- Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

- **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

SBA Form 1391 (5-00)                                                              Ref 50 30

EXHIBIT 2

DocuSign Envelope ID: Case 8:25-ap-01064-BY  Doc 5-1  Filed 09/08/25  Entered 09/08/25 15:52:21  Desc
Main Document of 33 Page 41 of 87

SBA Loan #        7408          Application #        8628

## PARTIES AFFECTED

- This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

## RESOLUTION OF BOARD OF DIRECTORS

- Borrower shall, within 180 days of receiving any disbursement of this Loan, submit the appropriate SBA Certificate and/or Resolution to the U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## ENFORCEABILITY

- This Loan Authorization and Agreement is legally binding, enforceable and approved upon Borrower's signature, the SBA's approval and the Loan Proceeds being issued to Borrower by a government issued check or by electronic debit of the Loan Proceeds to Borrower' banking account provided by Borrower in application for this Loan.

*James E. Rivera*

James E. Rivera
Associate Administrator
U.S. Small Business Administration

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA. **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

Crownco, Inc.

DocuSigned by:

*Charles Morrison*

D83FC5B4057741C...

Date:  05.13.2020

Charles Morrison, Owner/Officer

Note: Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer. Partnership Borrowers must execute in firm name, together with signature of a general partner. Limited Liability entities must execute in the entity name by the signature of the authorized managing person.

SBA Form 1391 (5-00)                                                                                          Ref 50 30

EXHIBIT 2

SBA Loan # ████ 7408                                       Application # ████ 8628

| | U.S. Small Business Administration | **Date:** 05.13.2020 |
|---|---|---|
| | # NOTE | **Loan Amount:** $150,000.00 |
| | (SECURED DISASTER LOANS) | **Annual Interest Rate:** 3.75% |

**SBA Loan #** ████ **7408**                              **Application #** ████ **8628**

1. **PROMISE TO PAY:** In return for a loan, Borrower promises to pay to the order of SBA the amount of **one hundred and fifty thousand and 00/100 Dollars ($150,000.00)**, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS: A)** "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note. **B)** "Guarantor" means each person or entity that signs a guarantee of payment of this Note. **C)** "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

3. **PAYMENT TERMS:** Borrower must make all payments at the place SBA designates. Borrower may prepay this Note in part or in full at any time, without notice or penalty. Borrower must pay principal and interest payments of **$731.00** every **month** beginning **Twelve (12)** months from the date of the Note. SBA will apply each installment payment first to pay interest accrued to the day SBA receives the payment and will then apply any remaining balance to reduce principal. All remaining principal and accrued interest is due and payable **Thirty (30) years** from the date of the Note.

4. **DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower: **A)** Fails to comply with any provision of this Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay this Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay this Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay this Note.

5. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under this Note; **B)** Have recourse to collect all amounts owing from any Borrower or Guarantor (if any); **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay this Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on this Note.

SBA FORM 147 B (5-00)

EXHIBIT 2

7.  **FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.  **GENERAL PROVISIONS: A)** All individuals and entities signing this Note are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of this Note. **F)** If any part of this Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer this Note.

9.  **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one- half times the proceeds disbursed, in addition to other remedies allowed by law.

10. **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

Crownco, Inc.

DocuSigned by:

*Charles Morrison*

D83FC5B4057741C...

Charles Morrison, Owner/Officer

EXHIBIT 2


## U.S. Small Business Administration

Economic Injury Disaster Loan

# AMENDED LOAN AUTHORIZATION AND AGREEMENT

Date: 05.13.2020, 07.23.2021 (Effective Date)

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan or Loan Modification (SBA Loan #          7408) to Crownco, Inc. (Borrower) of 26697 PIERCE CIR MURRIETA California 92562 in the amount of three hundred and fifty thousand and 00/100 Dollars ($350,000.00), upon the following conditions:

### PAYMENT

- Installment payments, including principal and interest, of $1,768.00 Monthly, will begin Twenty-four (24) months from the date of the Original Note. The balance of principal and interest will be payable Thirty (30) years from the date of the Original Note.

### INTEREST

- Interest will accrue at the rate of 3.75% per annum and will accrue only on funds actually advanced from the date(s) of each advance.

### PAYMENT TERMS

- Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

- Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

### COLLATERAL

- For loan amounts of greater than $25,000, Borrower hereby grants to SBA, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described herein to secure payment and performance of all debts, liabilities and obligations of Borrower to SBA hereunder without limitation, including but not limited to all interest, other fees and expenses (all hereinafter called "Obligations"). The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

- For loan amounts of $25,000 or less, SBA is not taking a security interest in any collateral.

### GUARANTEE

Borrower will provide the following guarantee(s):

SBA Form 1391 (5-00)                                                                                                Ref 50 30

EXHIBIT 2


- Guarantee on SBA Form 2128 of: Charles Morrison (31468 CREEK SIDE CT, MURRIETA, CA)

REQUIREMENTS RELATIVE TO COLLATERAL

- Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in the "Collateral" paragraph hereof without the prior written consent of SBA.

USE OF LOAN PROCEEDS

- Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and for loans of more than $25,000 to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

- Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement. Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

- Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA. The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred. To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

- Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

- Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered. The SBA will not consider a request for a loan increase received more than **two (2)** years from the date of loan approval unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

- **Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement**. By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement. The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

COMPENSATION FROM OTHER SOURCES

- Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources. Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3)

claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

- Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

- Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

- SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits. SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

## DUTY TO MAINTAIN HAZARD INSURANCE

- For loan amounts of greater than $25,000, within 12 months from the date of this Loan Authorization and Agreement the Borrower will provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on all items used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## BOOKS AND RECORDS

- Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first. Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

- Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require: (1) inspections and audits of any books, records and paper in the custody or control of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

- Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial statements.

- Upon written request of SBA, Borrower will accompany such statements with an 'Accountant's Review Report' prepared by an independent public accountant at Borrower's expense.

- Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

EXHIBIT 2

## LIMITS ON DISTRIBUTION OF ASSETS

- Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

## EQUAL OPPORTUNITY REQUIREMENT

- If Borrower has or intends to have employees, Borrower will post SBA Form 722, Equal Opportunity Poster (copy attached), in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

## DISCLOSURE OF LOBBYING ACTIVITIES

- Borrower agrees to the attached Certification Regarding Lobbying Activities

## BORROWER'S CERTIFICATIONS

Borrower certifies that:

- There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

- No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5 Business Disaster Loan Application'; SBA Form 3501 COVID-19 Economic Injury Disaster Loan Application; or SBA Form 159, 'Compensation Agreement'. All fees not approved by SBA are prohibited.

- All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

- No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

- Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

- Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application.
  All fees not approved by SBA are prohibited. If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area. Compensation cannot be contingent on loan approval. In addition, compensation must not include any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred. Compensation must not include

EXHIBIT 2

charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1. **If the compensation exceeds $500 for a disaster home loan or $2,500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website.**

- Borrower certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

## CIVIL AND CRIMINAL PENALTIES

- Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

## RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

- If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable. SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

- A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

## DISBURSEMENT OF THE LOAN

- Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

- Disbursements may be made in increments as needed.

- Other conditions may be imposed by SBA pursuant to general requirements of SBA.

- Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

- **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

EXHIBIT 2

## PARTIES AFFECTED

- This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

## RESOLUTION OF BOARD OF DIRECTORS

- Borrower and any business entity guarantor shall, within 180 days of receiving any disbursement of this Loan, submit the appropriate SBA Certificate and/or Resolution to the U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## ENFORCEABILITY

- This Loan Authorization and Agreement is legally binding, enforceable and approved upon Borrower's signature, the SBA's approval and the Loan Proceeds being issued to Borrower by a government issued check or by electronic debit of the Loan Proceeds to Borrower' banking account provided by Borrower in application for this Loan.

*James E. Rivera*

James E. Rivera
Associate Administrator
U.S. Small Business Administration

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA. **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

Crownco, Inc.

DocuSigned by:

*Charles Morrison*

42B14EDF19FA4AE...

Date:  07.23.2021

Charles Morrison, Owner/Officer

<u>Note:</u> Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer. Partnership Borrowers must execute in firm name, together with signature of a general partner. Limited Liability entities must execute in the entity name by the signature of the authorized managing person.

SBA Form 1391 (5-00)                                Ref 50 30

EXHIBIT 2



| U.S. Small Business Administration | **Date: July 23, 2021** |
|---|---|
| **1st Modification of Note** | **Loan Amount: $350,000.00** |
| (SECURED DISASTER LOANS) | **Annual Interest Rate: 3.750%** |

**Application #** ███ **8628**                     **Loan #** ███ **7408**

1. **NOTE:** The "Note" is the SBA note signed by Borrower, dated **May 13, 2020** in the amount of **one hundred and fifty thousand and 00/100 Dollars**, payable to SBA. This 1st Modification of Note modifies certain terms of the Note. The current modifications and any prior modifications to the Note, are disclosed below in Paragraphs 2 and 4.

2. **CURRENT PAYMENT TERMS:** Including terms modified by this agreement, the current payment terms of the 1st Modified Note are: The loan amount is **three hundred and fifty thousand.** The interest rate is **3.750%** per year. Payments of **$1,768.00** are due every **MONTH** beginning **Twenty-four (24)** months from the date of the Original Note. All remaining principal and accrued interest is due and payable Thirty (30) years from the date of Original Note.

3. **ADDITIONAL BORROWER: N/A**

4. **PREVIOUS NOTE AND MODIFICATIONS, IF ANY, AND CURRENT MODIFICATION TERMS SUMMARY:** The chart attached hereto and incorporated by reference as Addendum A is a summary of your original Note terms, any previous modifications thereto and this current modification:

5. **EFFECT OF THIS MODIFICATION:** All terms of the Note remain unchanged by this agreement except terms that are expressly modified. This Modification of Note becomes a part of the original Note and has the same effect as if its terms were in the original Note when it was signed.

6. **DEFINITIONS: A)** "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note. **B)** "Guarantor" means each person or entity that signs a guarantee of payment of the Note. **C)** "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

7. **DEFAULT:** Borrower is in default under the Note or any modification to the Note, if Borrower does not make a payment when due under the Note, or if Borrower: **A)** Fails to comply with any provision of the Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay the Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay the Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay the Note.

SBA FORM 2131 (5-00)

EXHIBIT 2

8. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under the Note; **B)** Collect all amounts owing from any Borrower or Guarantor; **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or, **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

9. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Incur expenses to collect amounts due under the Note, enforce the terms of the Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay the Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on the Note.

10. **WHEN FEDERAL LAW APPLIES:** When SBA is the holder, the Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to the Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

11. **GENERAL PROVISIONS: A)** All individuals and entities signing the Note, including this Modification, are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of the Note. **F)** If any part of the Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with the Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer the Note.

12. **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one half times the proceeds disbursed, in addition to other remedies allowed by law.

13. **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

**Crownco, Inc.**

DocuSigned by:

*Charles Morrison*

42B14EDF19FA4AE...

Charles Morrison, Owner/Officer

SBA FORM 2131 (5-00)

EXHIBIT 2

# Addendum A

|  | Date | Note Amount | Interest Rate | Periodic Payment Amounts | Maturity Date |
|---|---|---|---|---|---|
| Original Note | April 16, 2020 | $150,000.00 | 3.750% | $731.00 | May 15, 2050 |
| 1st Modification | April 27, 2021 | $350,000.00 | 3.750% | $1,768.00 | May 15, 2050 |

EXHIBIT 2

## U.S. Small Business Administration

Economic Injury Disaster Loan

# AMENDED LOAN AUTHORIZATION AND AGREEMENT

Date: 05.13.2020, 12.02.2021 (Effective Date)

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan or Loan Modification (SBA Loan # 7408) to CROWNCO INC. (Borrower) of 26697 PIERCE CIR MURRIETA California 92562 in the amount of one million eight hundred and thirty-three thousand and 00/100 Dollars ($1,833,000.00), upon the following conditions:

<u>PAYMENT</u>

- Installment payments, including principal and interest, of $9,005.00 <u>Monthly</u>, will begin <u>Twenty-four (24) months</u> from the date of the Original Note. The balance of principal and interest will be payable <u>Thirty (30) years</u> from the date of the Original Note.

<u>INTEREST</u>

- Interest will accrue at the rate of <u>3.75</u>% per annum and will accrue only on funds actually advanced from the date(s) of each advance.

<u>PAYMENT TERMS</u>

- Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

- Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

<u>COLLATERAL</u>

- For loan amounts of greater than $25,000, Borrower hereby grants to SBA, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described herein to secure payment and performance of all debts, liabilities and obligations of Borrower to SBA hereunder without limitation, including but not limited to all interest, other fees and expenses (all hereinafter called "Obligations"). The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

- For loan amounts greater than $500,000, Borrower agrees to also provide a Deed of Trust/Mortgage on the business real property, if available, prior to any new or additional disbursement of loan funds. Borrower is not required to provide a Deed of Trust/Mortgage on any business real property that is Borrower's primary residence, but must provide other real property collateral if available. Real property collateral is in addition to the business assets collateral requirement stated above.

- For loan amounts of $25,000 or less, SBA is not taking a security interest in any collateral.

<u>GUARANTEE</u>

       Borrower will provide the following guarantee(s):

EXHIBIT 2


- Guarantee on SBA Form 2128 of: Charles Morrison (31468 CREEK SIDE CT, MURRIETA, CA)

REQUIREMENTS RELATIVE TO COLLATERAL

- Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in the "Collateral" paragraph hereof without the prior written consent of SBA.

USE OF LOAN PROCEEDS

- Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and for loans of more than $25,000 to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

- Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement. Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

- Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA. The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred. To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

- Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

- Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered. The SBA will not consider a request for a loan increase received more than **two (2)** years from the date of loan approval unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

- **Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement.** By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement. The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

COMPENSATION FROM OTHER SOURCES

- Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources. Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3)

  claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

Page 3 of 11

- Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

- Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

- SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits. SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

<u>DUTY TO MAINTAIN HAZARD INSURANCE</u>

- For loan amounts of greater than $25,000, within 12 months from the date of this Loan Authorization and Agreement the Borrower will provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on all items used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

- For loan amounts greater than $500,000 and when Real Estate property is taken as collateral to secure this loan, in addition to the coverage required above, Borrower will also provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on any real estate used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

<u>DUTY TO MAINTAIN FLOOD INSURANCE</u>

- For loan amounts greater than $500,000 and if the collateral real property being used to secure this loan is located within a Special Flood Hazard Area (SFHA), Borrower will purchase (make application and pay the initial premium for) National Flood Insurance, or equivalent coverage for all insurable real property (including any manufactured housing) and contents in an amount equal to the lesser of the amount of this Loan, the maximum coverage available, or the fair market value of the property.  Borrower will provide proof of an active and in effect Flood Insurance policy to SBA prior to any new or additional disbursement of loan funds.

  Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. For any of the properties that are also specified as collateral for this Loan, the <u>SBA will be named as mortgagee or loss payee</u>. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS FLOOD INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.**

<u>BOOKS AND RECORDS</u>

- Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first. Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

- Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require: (1) inspections and audits of any books, records and paper in the custody or control

EXHIBIT 2

of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

- Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial statements.

- Upon written request of SBA, Borrower will accompany such statements with an 'Accountant's Review Report' prepared by an independent public accountant at Borrower's expense.

- Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

LIMITS ON DISTRIBUTION OF ASSETS

- Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

LIMIT TO FUND RAISING THROUGH SECURITY OFFERINGS

- Borrower agrees that in the event any funds are raised through a securities offering (either a public offering or private placement of common or preferred stock, or long term debt with an equity feature), SBA will have the immediate right to require full payment of the Loan balance or require that a portion of proceeds be applied to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

EQUAL OPPORTUNITY REQUIREMENT

- If Borrower has or intends to have employees, Borrower will post SBA Form 722, Equal Opportunity Poster (copy attached), in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

DISCLOSURE OF LOBBYING ACTIVITIES

- Borrower agrees to the attached Certification Regarding Lobbying Activities

BORROWER'S CERTIFICATIONS

Borrower certifies that:

- For loan amounts greater than $500,000 and when collateral real estate property is being used to secure this loan, Borrower certifies that they are the owner(s) of and hold legal title to any real estate being secured by this loan. Said premises are in their possession, and the title thereto has never been disputed or questioned as to any part thereof. Said premises are free of all mortgages, taxes, assessments, liens, encumbrances, and claims, or interest of any other party, except as disclosed. There are no actions pending affecting said real property.

- There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

- No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5 Business Disaster Loan Application'; SBA Form 3501 COVID-19 Economic Injury Disaster Loan Application; or SBA Form 159, 'Compensation Agreement'. All fees not approved by SBA are prohibited.

- All representations in the Borrower's Loan application (including all supplementary submissions) are true,

EXHIBIT 2

correct and complete and are offered to induce SBA to make this Loan.

- No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

- Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

- Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application.

  All fees not approved by SBA are prohibited. If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area. Compensation cannot be contingent on loan approval. In addition, compensation must not include any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred. Compensation must not include charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1. **If the compensation exceeds $500 for a disaster home loan or $2,500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website.**

- Borrower certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

## CIVIL AND CRIMINAL PENALTIES

- Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

## RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

- If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable. SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

- A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

## DISBURSEMENT OF THE LOAN

- Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

- Disbursements may be made in increments as needed.

- Other conditions may be imposed by SBA pursuant to general requirements of SBA.

Page 6 of 11

EXHIBIT 2

Case 8:25-ap-01064-BY   Doc 5-1   Filed 09/03/25   Entered 09/03/25 15:52:21   Desc
Main Document   Page 58 of 87
DocuSign Envelope ID:

Case 8:25-ap-01064-BY   Doc 5-1   Filed 09/03/25   Entered 09/03/25 15:52:21   Desc Page 58 of 87
of 33   Page 58 of 87

- Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

- **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

PARTIES AFFECTED

- This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

RESOLUTION OF BOARD OF DIRECTORS

- Borrower and any business entity guarantor shall, within 180 days of receiving any disbursement of this Loan, submit the appropriate SBA Certificate and/or Resolution to the U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

ENFORCEABILITY

- This Loan Authorization and Agreement is legally binding, enforceable and approved upon Borrower's signature, the SBA's approval and the Loan Proceeds being issued to Borrower by a government issued check or by electronic debit of the Loan Proceeds to Borrower' banking account provided by Borrower in application for this Loan.

*James E. Rivera*

James E. Rivera
Associate Administrator
U.S. Small Business Administration

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA.  **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

**CROWNCO INC.**

DocuSigned by:
*Charles Morrison*
085A967F29A44C8...

Date:   12.02.2021

Charles Morrison, Owner/Officer

<u>Note:</u> Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer. Partnership Borrowers must execute in firm name, together with signature of a general partner. Limited Liability entities must execute in the entity name by the signature of the authorized managing person.

EXHIBIT 2



| U.S. Small Business Administration | **Date: December 2, 2021** |
| --- | --- |
| **2nd Modification of Note** | **Loan Amount: $1,833,000.00** |
| (SECURED DISASTER LOANS) | **Annual Interest Rate: 3.750%** |

**Application #** ████**8628**                    **Loan #** ████**7408**

1. **NOTE:** The "Note" is the SBA note signed by Borrower, dated **May 13, 2020** in the amount of **one hundred and fifty thousand and 00/100 Dollars**, payable to SBA. This 2nd Modification of Note modifies certain terms of the Note. The current modifications and any prior modifications to the Note, are disclosed below in Paragraphs 2 and 4.

2. **CURRENT PAYMENT TERMS:** Including terms modified by this agreement, the current payment terms of the 2nd Modified Note are: The loan amount is **one million eight hundred and thirty-three thousand and 00/100 Dollars.** The interest rate is **3.750%** per year. Payments of **$9,005.00** are due every **MONTH** beginning **Twenty-four (24)** months from the date of the Original Note. All remaining principal and accrued interest is due and payable Thirty (30) years from the date of Original Note.

3. **ADDITIONAL BORROWER: N/A**

4. **PREVIOUS NOTE AND MODIFICATIONS, IF ANY, AND CURRENT MODIFICATION TERMS SUMMARY:** The chart attached hereto and incorporated by reference as Addendum A is a summary of your original Note terms, any previous modifications thereto and this current modification:

5. **EFFECT OF THIS MODIFICATION:** All terms of the Note remain unchanged by this agreement except terms that are expressly modified. This Modification of Note becomes a part of the original Note and has the same effect as if its terms were in the original Note when it was signed.

6. **DEFINITIONS: A)** "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note. **B)** "Guarantor" means each person or entity that signs a guarantee of payment of the Note. **C)** "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

7. **DEFAULT:** Borrower is in default under the Note or any modification to the Note, if Borrower does not make a payment when due under the Note, or if Borrower: **A)** Fails to comply with any provision of the Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay the Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay the Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay the Note.

SBA FORM 2131 (5-00)

EXHIBIT 2

8. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under the Note; **B)** Collect all amounts owing from any Borrower or Guarantor; **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or, **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

9. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Incur expenses to collect amounts due under the Note, enforce the terms of the Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay the Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on the Note.

10. **WHEN FEDERAL LAW APPLIES:** When SBA is the holder, the Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to the Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

11. **GENERAL PROVISIONS: A)** All individuals and entities signing the Note, including this Modification, are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of the Note. **F)** If any part of the Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with the Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer the Note.

12. **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one half times the proceeds disbursed, in addition to other remedies allowed by law.

13. **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

**CROWNCO INC.**

DocuSigned by:

*Charles Morrison*

085A967F29A44C8...

Charles Morrison, Owner/Officer

SBA FORM 2131 (5-00)

EXHIBIT 2

# Addendum A

| | Date | Note Amount | Interest Rate | Periodic Payment Amounts | Maturity Date |
|---|---|---|---|---|---|
| Original Note | May 13, 2020 | $150,000.00 | 3.750% | $731.00 | May 15, 2050 |
| 1st Modification | July 23, 2021 | $350,000.00 | 3.750% | $1,768.00 | May 15, 2050 |
| 2nd Modification | December 2, 2021 | $1,833,000.00 | 3.750% | $9,005.00 | May 15, 2050 |

EXHIBIT 2

# EXHIBIT 3

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), dated as of the last date on which this Agreement is signed by all of the parties hereto (the "**Effective Date**"), is made and entered into by and between Precis Development Inc., a California corporation (the "**Seller**"), and Phillip Jeremiah LLC, a California limited liability company (the "**Buyer**"), with reference to the following facts:

## RECITALS

WHEREAS, Seller is engaged in the sale and installation of solar panels to residential, commercial, and industrial customers (the "**Business**");

WHEREAS, Shareholder owns all of Seller's issued and outstanding shares; and

WHEREAS, Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, on the terms and subject to the conditions of this Agreement, substantially all of the assets of Seller, used or held for use in the Business and described in <u>Article 1, Section 1.1</u> (the "Pur**chased Assets**").

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## AGREEMENT

## ARTICLE 1
## Purchase and Sale of the Purchased Assets

1.1    **Purchase and Sale of the Purchased Assets**.  At the Closing (defined below), upon and subject to the terms and conditions of this Agreement, Seller shall sell, assign, transfer, and deliver to Buyer, and Buyer shall purchase and acquire from Seller, all of Seller's right, title, and interest in and to the Purchased Assets, including, without limitation, the following assets, rights, and properties, free and clear of any and all liens, pledges, hypothecations, charges, mortgages, deeds of trust, security interests, encumbrances, claims, infringements, options, rights of first offer and/or refusal, warrants, preemptive rights, community property interests, or restriction of any nature on any Purchased Asset (collectively, "**Encumbrances**"):

1.1.1    All tangible and intangible assets of the Business;

1.1.2    All goodwill associated with the Business and the Purchased Assets;

1.1.3    All Intellectual Property Rights exercisable or available in any jurisdiction of the world, and the exclusive right for Buyer to hold itself out to be the successor to the Business of the Seller;

1.1.4    All accounts payable;

1.1.5    All furniture, fixtures, equipment, machinery, and vehicles;

1

EXHIBIT 3

1.1.6    All permits, appropriate licenses, agreements, waivers, and authorizations from, issued, or granted by any governmental authority as necessary;

1.1.7    All of Seller's pertaining business records, including general and financial records, marketing, and sale information, and plans, pricing, customer lists, and databases;

1.1.8    All inventories of equipment, parts, and supplies relating to the Business;

1.1.9    All of Seller's rights and interests in and to the accounts receivable relating to the Business; and

1.1.10   Any and all tangible and intangible assets of the Business that are not Excluded Assets.

1.2    **Excluded Assets**.  Notwithstanding anything to the contrary herein, the following assets and properties of Seller prior to the Closing (the "**Excluded Assets**") shall be excluded from the Purchased Assets and shall remain assets and properties of Seller following the Closing:

1.2.1    All cash on hand and in Seller's deposit accounts, money market accounts, and other similar accounts located at banks and other financial institutions;

1.2.2    All marketable securities;

1.2.3    All minute books and other corporate records and company seals;

1.2.4    All personnel records and other records that Seller is required by law to retain in its possession;

1.2.5    All claims for refund of Taxes and other governmental charges of whatever nature; and

1.2.6    All rights of Seller under this Agreement and any other document or instrument executed by Seller in connection with this Agreement.

## ARTICLE 2
### Assumed and Excluded Liabilities

2.1    **Assumption of Liabilities**.  Subject to the terms and conditions of this Agreement, concurrently with the purchase of the Purchased Assets, (a) Seller hereby conveys, assigns, and transfers to Buyer any and all liabilities and obligations of Seller, other than the Excluded Liabilities expressly set forth herein, and (b) Buyer hereby assumes and agrees to pay, perform, and discharge when due all other liabilities of Seller other than the Excluded Liabilities (collectively, the "**Assumed Liabilities**").

10296030.1

EXHIBIT 3

2.2    **Excluded Liabilities**.  Other than the Assumed Liabilities, Buyer will not assume, be liable for, or agree to pay, perform, or discharge any liability or other obligation of Seller, whether known or unknown, including any liability or obligation:

      2.2.1    Arising out of, incurred in connection with, related to, or created because of this Agreement;

      2.2.2    Resulting from Seller's or any other person's breach of contract arising out of or related to the sale of the Purchased Assets under this Agreement;

      2.2.3    In connection with agreements or contracts not assumed by Buyer under this Agreement;

      2.2.4    of Seller for any Taxes arising before the Closing Date;

      2.2.5    In connection with any of Seller's employees, including salaries, benefits, commissions, Seller's employee benefit or employee-benefit plans in which Seller's employees participate, payroll taxes, or any severance payments due because of Seller's termination of its employees as contemplated by this Agreement; and

      2.2.6    Any other liability or obligation of Seller arising after the Closing in connection with the Business.

## ARTICLE 3
### Purchase Price

3.1    **Purchase Price**.  The purchase price (the "**Purchase Price**") for the sale of the Purchased Assets is Five Million and 00/100 Dollars ($5,000,000.00).  Buyer shall pay the Purchase Price as follows:

      3.1.1    **Closing Payment**.  At Closing, Buyer shall pay to Seller the sum of Four Million and 00/100 Dollars ($4,000,000.00) in cash or other immediately available funds (the "**Closing Payment**").

      3.1.2    **Note**.  The balance of the Purchase Price (i.e., One Million and 00/100 Dollars ($1,000,000.00)) shall be paid by Buyer pursuant to the terms of a promissory note (the "**Note**") in the form attached hereto as **Exhibit A**, which Note shall be executed and delivered to Seller at Closing.  In order to secure Buyer's obligations under the Note, Buyer shall grant to seller a security interest in certain assets of Buyer, which shall be evidenced by a security agreement in the form attached hereto as **Exhibit B** (the "**Security Agreement**").  Buyer's obligations under the Note shall be guaranteed by Charles Morrison Sr., and Charles Morrison Jr., the Buyer's pursuant to the terms of a guaranty (the "**Guaranty**") in the form attached hereto as **Exhibit C**.

3.2    **Bulk Sales**.  The parties hereby waive compliance with the provision of any bulk sales, bulk transfer, or similar laws of any jurisdiction that may be applicable with respect to the sale of any or all of the Purchased Assets to Buyer; it being understood that any claims arising out of Seller's failure to comply with the requirements and provisions of any bulk sales, bulk transfer, or similar laws of any jurisdiction shall be treated as Excluded Liabilities.

10296030.1

**EXHIBIT 3**

3.3     **Covenant Not to Compete**.  From and after the Closing, Brian M. Hopwood, the principal of Seller (the "**Principal of Seller**"), agrees to not compete with the Business or Buyer, pursuant to the terms of a non-compete agreement in the form attached hereto as **Exhibit D** (the "**Non-Compete Agreement**").

3.4     **Purchase Price Allocation**.  The Purchase Price must be allocated among the Purchased Assets set forth below, as mutually agreed to by the parties.  After Closing, the parties agree to make consistent use of such allocation in any and all filings, declarations, and reports with the Internal Revenue Service and all state and local taxing authorities; this includes the reports required to be filed under any Section of the Internal Revenue Code of 1986, as amended, or under state or local tax law.

| | |
|---|---|
| Covenant Not to Compete | $15,000.00 |
| Tangible Assets | $2,000,000.00 |
| Intangible Assets | $2,500,000.00 |
| Other Assets | $485,000.00 |
| TOTAL: | $5,000,000.00 |

## ARTICLE 4
## Closing; Closing Deliverables

4.1     **Closing**.  The closing of the purchase and sale of the Purchased Assets (the "**Closing**") shall take place remotely by exchange of documents and signatures or at such other place or via such other means as the parties may agree, simultaneously with the parties' execution and delivery of this Agreement on the Effective Date hereof (the "**Closing Date**").

4.2     **Deliveries by Seller**.  At the Closing, Seller will deliver or cause to be delivered to Buyer each of the following:

4.2.1     A duly executed counterpart of this Agreement;

4.2.2     A duly executed Bill of Sale and General Assignment in the form attached hereto as **Exhibit E**;

4.2.3     A duly executed counterpart of the Security Agreement;

4.2.4     A duly executed counterpart of the Non-Compete Agreement executed by the Principal of Seller; and

4.2.5     Such other documents or instruments as Buyer may reasonably require.

4.3     **Deliveries by Buyer**.  At the Closing, Buyer will deliver or cause to be delivered to Seller each of the following:

4.3.1     A duly executed counterpart of this Agreement;

4.3.2     The Closing Payment in cash or other immediately available funds;

10296030.1

EXHIBIT 3

4.3.3    A duly executed counterpart of the Security Agreement;

4.3.4    The Guaranty, duly executed by All Buyer's

4.3.5    A duly executed counterpart of the Non-Compete Agreement; and

4.3.6    Such other documents or instruments as Seller may reasonably require.

4.4    **Simultaneous Deliveries**.  The delivery of the documents required to be delivered at the Closing pursuant to this Agreement shall be deemed to occur simultaneously.  No delivery shall be effective until each party has received or waived receipt of all of the documents that this Agreement entitles each such party to receive.


# ARTICLE 5
## Representations and Warranties of Seller

As used in this Article 5, "**To Seller's knowledge**" and similar phrases means the actual, conscious knowledge of the Principal of Buyer, without and duty to investigate or inquire.  Seller represents and warrants to Buyer as follows:

5.1    **Organization of Seller**.  Seller is a California corporation duly organized, validly existing and in good standing under the laws of the State of California.

5.2    **Authority**.  Seller has full power and authority to execute this Agreement, any and all documents and instruments reasonably necessary to close and consummate the transactions contemplated in this Agreement, and to perform its obligations hereunder.

5.3    **Approval**.  The execution of this Agreement by Seller has been duly authorized and approved by Seller consistent with the provisions of the California Corporations Code and/or all other applicable laws.  No further action is required on the part of Seller to make this Agreement valid and binding upon Seller and enforceable against Seller in accordance with its terms, except as to the effect, if any, of (i) applicable bankruptcy and other similar laws affecting the rights of creditors generally and (ii) rules of law governing specific performance, injunctive relief and other equitable remedies.

5.4    **Consummation Not a Breach**.  Neither the execution nor delivery of this Agreement nor the consummation of the transactions contemplated by this Agreement will (i) result in or constitute the creation or imposition of any lien, charge, or encumbrance on any of the Purchased Assets, nor (ii) result in a breach of the terms, conditions or provisions of, or constitute a default under, any agreement or instrument to which Seller is a party, or any restriction to which Seller is subject, or constitute a violation of any statute, regulation, rule, judgment, decree, or order applicable to Seller.  No person, party, or entity has any option or right to acquire any right, title, or interest in the Purchased Assets, or any part thereof.

5.5    **Consents and Approvals**.  No prior consent or approval of any person or regulatory authority or third party, and no approval, order, license, permit, declaration, or filing of any nature is required as a result of or in connection with Seller's execution and delivery of, and

**EXHIBIT 3**

performance of its obligations under, this Agreement. No further action is required on the part of Seller to make this Agreement valid and binding upon Seller and enforceable against Seller in accordance with its terms.

5.6 **Compliance with Law and Conditions**. To Seller's knowledge, Seller has complied with all, and is not in violation of any: (i) federal, state or local statutes, laws and/or regulations (including, without limitation, environmental, fire, safety, or other public safety law, ordinance, or regulation) applicable to or affecting the Purchased Assets and/or Seller's operation of the Business; and (ii) recorded covenants, conditions, restrictions or easements on, against or affecting the Purchased Assets or the Business, or any portion thereof.

5.7 **Employment Matters**. Seller shall terminate all of its employees on or before the Closing Date, and Seller will have paid all employees for all compensation and benefits of any type which is due to them through the date of termination.

5.8 **Litigation**. There is no suit, action, arbitration, unfair labor practice charge, or legal, administrative or other proceeding, or governmental investigation, pending or, to Seller's knowledge, threatened, against or affecting the Purchased Assets or any portion thereof. To Seller's knowledge, Seller is not in default with respect to any order, writ, injunction, or decree of any federal, state, local, or foreign court, department, agency, or instrumentality in connection with the Purchased Assets. Seller is not presently engaged in any legal action to recover monies due or damages sustained with respect to the Purchased Assets.

5.9 **Taxes**. Seller has properly filed all federal, state, local, and foreign income and other Tax returns, reports and declarations required by applicable law and, except as otherwise disclosed to Buyer in writing, has paid all Taxes (as defined below) when properly due.

5.10 **No Omission**. No representation or warranty made herein by Seller pursuant to this Agreement contains or will contain any untrue statement of material fact, or omit any material fact, the omission of which would be misleading.

5.11 **Title to Purchased Assets**. Seller has good and marketable title in and to all of the Purchased Assets free and clear of all Encumbrances. The Purchased Assets constitute all assets, properties, rights, and Intellectual Property Rights that are necessary or required to enable Buyer, following the Closing, to own, conduct, operate, and maintain Seller's business as historically conducted or as proposed to be conducted without: (i) the need for Buyer to acquire or license any other asset, property or Intellectual Property Right; (ii) the breach or violation of any contract or commitment to which Seller is bound or to which any of the Purchased Assets is subject; or (iii) infringement of any Intellectual Property Right of any other person. For purposes of this Agreement, "**Intellectual Property Right**" means, collectively, all of the following worldwide intangible legal rights, acquired by ownership, license, or other legal operation: (1) all patents, patent applications, and patent rights, including all continuations, continuations-in-part, divisions, reissues, reexaminations, and extensions of them; (2) all trademarks, trade names, logos, and service marks, registered or not; (3) all rights associated with works of authorship, including copyrights (registered or not), copyright applications, copyright registrations, moral rights, mask work rights, mask work applications, and mask work registrations; (4) all inventions (patentable or not), know-how, show-how, formulas, processes, techniques, confidential business information,

6

EXHIBIT 3

trade secrets, and other proprietary information, technology, and intellectual property rights; and (5) all rights to sue or make any claims for any past, present, or future misappropriation or unauthorized use of any of the foregoing rights and the right to receive income, royalties, damages, or payments that are now or will later become due with regard to the foregoing rights.

5.12    **Non-Foreign Status**.    Seller is not a foreign person or entity under Internal Revenue Code Section 1445.

5.13    **Inventory**.    Seller's inventory comprises items of a quality and quantity usable and saleable in the usual and ordinary course of business.    The inventory items comprising raw materials and work in process are capable of being processed into finished goods of merchantable quality at ordinary costs and by ordinary procedures.

5.14    **Real Property**.    Seller leases its business premises located at 36625 Kevin Rd. Suite 147, Wildomar, CA 92595 (the "**Business Premises**") pursuant to that certain [●], [dated], entered into by and between Seller and [Landlord] (the "**Business Premises Lease**").    A copy of the Business Premises Lease has been provided to Buyer.    The Business Premises Lease is valid and in full force and effect.    To Seller's knowledge, Landlord is not in default under the Business Premises Lease and no condition exists that, with notice or lapse of time or both, would constitute such a default.    No leasing fees or commissions are due or to become due, now or upon renewal or expansion, with respect to the Business Premises Lease.    To Seller's knowledge, the Business Premises complies with applicable zoning ordinances, building codes, and other governmental regulations.

5.15    **Brokers and Finders**.    No broker or finder has acted for Seller in connection with this Agreement or the transactions contemplated by it.    No broker or finder is entitled to any brokerage commission, finder's fee, or other compensation based on an agreement or arrangement by Seller.

5.16    **No Material Misstatements**.    No representation or warranty by Seller in this Agreement or in any attached exhibit or schedule contains any untrue statement of a material fact or omits to state a material fact necessary to fairly inform Buyer.

### ARTICLE 6
### Representations and Warranties of Buyer

Buyer represents and warrants to Seller as follows.

6.1    **Organization and Standing**.    Buyer is a limited liability company duly organized, validly existing, and in good standing under the laws of California.

6.2    **Capacity and Authority**.    Buyer has the requisite limited liability company power and limited liability company authority to sign and deliver this Agreement and to carry out the terms applicable to it under this Agreement.    The signing, delivery, and performance of this Agreement by Buyer has been duly authorized by all requisite limited liability company action on the part of Buyer, and this Agreement has been duly signed and delivered by Buyer.    This Agreement comprises, and each other agreement or instrument to be signed and delivered by Buyer

10296030.1

**EXHIBIT 3**

under the terms of this Agreement will comprise, the legal, valid, and binding obligations of Buyer, enforceable against Buyer in accordance with their terms.

6.3    No Violations.  Buyer's signing and delivery of this Agreement, consummation of the transactions contemplated by this Agreement, and performance of Buyer's obligations under this Agreement will not:

6.3.1    conflict with or violate Buyer's articles, operating agreement, or any other governing or organizational document;

6.3.2    conflict with or violate any applicable law, rule, or regulation affecting Buyer; or

6.3.3    conflict with or violate any judgment, order, decree, or award of any court, arbitrator, mediator, or governmental agency or instrumentality, to which Buyer is a party or by which Buyer is bound or affected.

6.4    **Consents and Approvals**.  No consent, approval, authorization, or other action by, or filing or registration with, any federal, state, or local governmental authority or any other person or entity is required in connection with Buyer's signing and delivery of this Agreement, consummation of the transactions contemplated by this Agreement, or performance of Buyer's obligations under this Agreement.

6.5    **Litigation and Claims**.  Buyer is not a party to, nor is there any pending or overtly threatened litigation or other legal proceeding or governmental investigation against Buyer challenging the validity or propriety of, or seeking to enjoin or set aside Buyer's:

6.5.1    signing and delivery of this Agreement;

6.5.2    consummation of the transactions contemplated by this Agreement; or

6.5.3    performance of Buyer's obligations under this Agreement.

6.6    **Brokers and Finders**.  No broker or finder has acted for Buyer in connection with this Agreement or the transactions contemplated by this Agreement.  No broker or finder is entitled to any brokerage commission, finder's fee, or other compensation based on agreements or arrangements made by Buyer.

6.7    **AS-IS Purchase**.  Subject only to the representations and warranties of Seller, Buyer acknowledges and agrees that at the Closing, Seller shall sell and convey, and Buyer shall purchase and accept, the Purchased Assets in their "AS-IS, WHERE-IS, WITH ALL FAULTS" condition.

10296030.1

EXHIBIT 3

## ARTICLE 7
### Post-Closing Covenants

7.1     **Access to Books and Records**.  After the Closing, Buyer will make available to Seller the information and documents that Seller reasonably requests to defend any claim, demand, or assertion, including tax audits, brought by or against Seller or a third party, and to prepare any tax returns for the fiscal year of Seller (or any portion thereof) occurring before the Closing.

7.2     **Employment of Seller's Employees**.  After Closing, Buyer has no responsibility whatsoever with respect to Seller's employees.  Buyer is not obligated to hire any of Seller's employees.  Buyer assumes none of Seller's obligations to or with respect to any of its employees; this includes, but is not limited to, obligations under employment contracts, employee-benefit plans, collective-bargaining agreements, and applicable laws.  Applicable laws include, without limitation, liability for payroll taxes and other proper deductions and withholdings.

7.3     **Tax Obligations**.

7.3.1     **Seller's Tax Obligations**.  All Taxes (as hereinafter defined) due or payable by Seller whether incurred or arising in connection with operation of the Business by Seller prior to the Closing shall be and remain Excluded Liabilities and shall be paid, satisfied and discharged in a timely fashion.  For purposes of this Agreement, "**Tax**" (and, with correlative meaning, "**Taxes**" and "**Taxable**") means any net income, alternative or add-on minimum tax, gross income, gross receipts, sales, use, ad valorem, transfer, profits, license, withholding, payroll, employment, excise, severance, stamp, occupation, premium, property, environmental or windfall profit tax, custom, duty or other tax, governmental fee or other like assessment or charge of any kind whatsoever, together with any interest or any penalty, addition to tax or additional amount imposed.

7.3.2     **Buyer's Tax Obligations**.  Notwithstanding Article 7, Section 7.3.1, above, and by way of limitation, all Taxes incurred or arising in connection with the purchase and sale of the Purchased Assets shall be and remain Assumed Liabilities and the obligation of Buyer.  Buyer shall be solely responsible for all Taxes of the Business incurred after the Closing.

7.4     **Further Assurances**.  At or after the Closing, each party shall prepare, execute, and deliver, at the preparer's expense, such further instruments of conveyance, sale, assignment, or transfer, and shall take or cause to be taken such other or further action, as any party shall reasonably request of any other party at any time or from time to time in order to perfect, confirm, or evidence in Buyer title to all or any part of the Purchased Assets or to consummate, in any other manner, the terms and provisions of this Agreement.

## ARTICLE 8
### Indemnification

8.1     **Indemnification by Seller**.  From and after the Closing Date, Seller shall indemnify, defend, and hold harmless Buyer, and its successors and assigns, from, against, and in respect of any and all actual claims, suits, actions, proceedings, investigations, judgments, actual, out of pocket deficiencies, damages, settlements, liabilities, losses, costs, and reasonable legal and

10296030.1

EXHIBIT 3

other expenses (collectively, "**Claims**") relating to or arising out of (x) the material breach of any representation, warranty, covenant, or agreement of Seller contained in this Agreement or in any other agreement or instrument executed and delivered by any of them hereunder or in connection herewith; and (y) any and all of Seller's debts, liabilities and obligations arising from Seller's ownership or operation of the Purchased Assets or the Business arising prior to the Closing Date.

8.2     **Indemnification by Buyer**.  From and after the Closing Date, Buyer shall indemnify, defend, and hold harmless Seller, and Seller's directors, officers, shareholders, employees, agents, representatives, successors, and assigns, from, against, and in respect of any and all Claims relating to or arising out of (x) the breach of any representation, warranty, covenant, or agreement of Buyer contained in this Agreement or in any other agreement or instrument executed and delivered by Buyer hereunder or in connection herewith; (y) Buyer's operation of the Business from and after the Closing; and/or (z) Buyer's ownership or use of the Purchased Assets after the Closing Date.

8.3     **Indemnification Procedure for Third Party Claims**.  Any Buyer Indemnitee or Seller Indemnitee (the "**Indemnified Party**") seeking indemnification under this Agreement shall provide to the indemnifying party (the "**Indemnifying Party**"): (i) prompt written notice of such claim (but in any event notice in sufficient time for the Indemnifying Party to respond without prejudice); (ii) the Indemnifying Party shall have exclusive right to control and direct the investigation, defense, and settlement (if applicable) of such claim provided it does not prejudice the Indemnified Party or create a conflict of interest, in which case the Indemnified Party may retain its own counsel and such reasonable attorneys' fees shall be paid for by the Indemnifying Party; and (iii) all the Indemnified Party shall provide all reasonably necessary cooperation to the Indemnifying Party.  The Indemnifying Party may not settle any such Claim under this Section 6.5.3 without the prior written consent of the Indemnified Party to the extent such settlement includes any liability or finding of fault on behalf of the Indemnified Party.

8.4     **Limits on Indemnification**.  Each party's indemnification obligations under this Agreement shall survive the Closing for a period of six (6) months (the "**Indemnification Period**"), and in no event shall exceed an amount equal to three percent (3%) of the Purchase Price (the "**Indemnification Cap**") actually received by Seller.  No indemnification under this <u>Article 8</u> shall be made by Seller unless and until the aggregate amount of Buyer's actual out of pocket damages, costs, fees, and expenses for all Claims exceeds the sum of $50,000 ("**Basket**"), in which event such indemnification shall only apply to Buyer's actual out of pocket damages, costs, fees, and expenses in excess of the Basket.

8.5     **Sole and Exclusive Remedy**.  Other than with respect to any equitable remedies, including specific performance, the indemnification provided herein is the sole and exclusive remedy of Buyer and Seller with respect to matters described herein without regard to whether the matter involves claims fraud in contract, tort, equity or otherwise.

10296030.1

**EXHIBIT 3**

## ARTICLE 9
## General Provisions

9.1 **Notice**. Any notice required or permitted to be given under this Agreement will be in writing, and delivered (a) personally; (b) by nationally recognized overnight courier service; or (c) by e-mail. Notices personally delivered shall be deemed received upon actual receipt. Notices sent by nationally recognized overnight courier shall be deemed received as of the delivery date reported by the overnight courier, or, if no such date is reported, on the next Business Day. Notices sent by e-mail shall be deemed received on the same day as transmitted provided that such transmission occurs on a Business day during the hours of 8:00 a.m. and 5:00 p.m. Pacific Time. Any facsimile or e-mail transmission sent during any other time shall be deemed received on the next Business Day. Any party listed below may change his, her, or its contact information listed below by delivery of a notice in accordance with the provisions of this Article 9, Section 9.1. Notices shall be addressed as follows:

| | |
|---|---|
| If to Seller: | Precis Development, Inc.<br>Attn: Brian Hopwood<br>36625 Kevin Rd. Suite 147<br>Wildomar, CA 92595<br>E-Mail:  brian@precissolar.com |
| With a copy to (but which copy shall not constitute notice): | Higgs Fletcher & Mack LLP<br>Attn: Eric D. Tetrault, Esq.<br>401 West A Street, Suite 2600<br>San Diego, CA 92101<br>E-Mail: tetraulte@higgslaw.com |
| If to Buyer: | Phillip Jeremiah LLC<br>Attn: Charles Morrison Sr.<br>26697 Pierce Cir.<br>Murrieta, CA 92562<br>E-Mail: cm@cmorrison.email |
| With a copy to (but which copy shall not constitute notice): | James J. Flick<br>3700 South Conway Rd., Suite 100<br>Orlando, Florida 32812<br>Facsimile: (407)273-1058 |

9.2 **Counting Days**. A "**Business Day**" shall mean any day other than a Saturday, Sunday, or any days on which national banks are closed for business. If any date of performance falls on a day other than a Business Day, the time for such performance shall be extended to the next Business Day.

9.3 **Governing Law**. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without regard to its conflict of law provision. Any action to enforce the terms of this Agreement shall be brought in San Diego County, California.

10296030.1

EXHIBIT 3

9.4    **No Consequential Damages**.   Except in the event of intentional or reckless misconduct, the Parties expressly waive and forgo any right to punitive, loss profits, consequential, multiple, exemplary or similar damages as a result of any controversy or claim arising out of, relating to or in connection with this Agreement, or the breach, termination or validity thereof.

9.5    **Entire Agreement; Amendment**.   This Agreement, the Recitals and the agreements and Exhibits referenced herein constitute the entire agreement among the parties pertaining to the subject matter contained herein, and supersede all prior and contemporaneous agreements, representations and undertakings of the parties.  No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by the parties hereto. Each of the Exhibits to this Agreement is incorporated herein as a material part of this Agreement.

9.6    **Waiver**.  No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the party making the waiver.

9.7    **Public Announcements**.  Buyer shall not issue any press release or make any public announcement of the negotiations or transactions that are the subject of this Agreement without the prior written consent of Seller, unless that public announcement is required by law.

9.8    **Attorneys' Fees**.  In the event legal proceedings are instituted to enforce any provision of this Agreement, the prevailing party in such a proceeding shall be entitled to its costs and expenses, including reasonable attorneys' fees.

9.9    **Interpretation**.  This Agreement shall not be construed against the drafting party. Instead, in light of the fact that both Buyer and Seller have actively participated in the drafting and negotiation of this Agreement and all other agreements, instruments and documents required hereby or contemplated herein, the parties desire that this Agreement (and all such other agreements, instruments and documents) be given a reasonable interpretation in accordance with the plain meaning of its terms, and that it be fairly interpreted without any strict construction in favor of or against either party. In this regard, each of the parties hereby knowingly waives any statutory provision, judicial precedent or other rule of law that provides that contractual ambiguities are to be construed against the party who drafted the ambiguous provision in question.

9.10    **Severability**.   Any provision of this Agreement that is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

9.11    **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one and the same instrument.  Facsimile and electronic signatures shall be deemed as original for all purposes.

9.12    **Successors**.  This Agreement shall be binding and inure to the benefit of the parties' successors and assigns.

10296030.1

EXHIBIT 3

9.13    **No Third-Party Beneficiaries**.  The obligations of Buyer hereunder are made for the benefit of Seller only, and shall not extend to any third party associated with Seller.  No party other than Seller shall have or enjoy any rights against Buyer under this Agreement, whether directly, derivatively or by right of subrogation.

9.14    **Assignment**.  No party may assign this Agreement or rights in this Agreement without the prior written consent of the other party hereto.  Any assignment or attempted assignment without the other party's prior written consent shall be void.

IN WITNESS WHEREOF, Buyer and Seller have executed this Asset Purchase Agreement to be effective as of the Effective Date.

**SELLER:**

Precis Development, Inc.,
a California corporation

Dated: _____    By: _____
                                         Name: Brian Hopwood
                                         Title: President

**BUYER:**

Phillip Jeremiah LLC,
a California limited liability company

Dated: _____    By: _____
                                         Name: Charles Morrison Sr.
                                         Its: Member-Manager

Dated: _____    By: _____
                                         Name: Charles Morrison Jr.
                                         Its: Member-Manager

13

EXHIBIT 3

14

EXHIBIT 3

**Exhibit A**

Form of Note

[attached]

**Exhibit A**

EXHIBIT 3

**Exhibit B**

Form of Security Agreement

[attached]

EXHIBIT 3

**Exhibit C**

Form of Guaranty

[attached]

**Exhibit C**

EXHIBIT 3

**Exhibit D**

Form of Non-Compete Agreement

[attached]

**Exhibit D**

EXHIBIT 3

**Exhibit E**

Form of Bill of Sale and General Assignment

[attached]

# EXHIBIT 4

# Crownco, Inc

## Balance Sheet

As of May 31, 2024

| | TOTAL |
|---|---|
| ASSETS | |
| Current Assets | |
| Bank Accounts | |
| 11004 - Petty Cash | 6.00 |
| 11008 SD Petty Cash | 0.00 |
| 11009 IE Petty Cash | 0.00 |
| 11010 OC Petty Cash | 0.00 |
| 11017 BBVA 3480/ PNC 2968 | 23,036.41 |
| 11020 ADP Payroll Clearing | -97,918.94 |
| 11021 CB CLEARING | 595.07 |
| 11031 GreenLight Fund | 0.00 |
| 60103 Fuel Expenses_FE | |
| Fuel Temp1 | 547.21 |
| **Total 60103 Fuel Expenses_FE** | **547.21** |
| BANK FEES | 471.46 |
| Checking (5797) | -51,869.32 |
| Checking (6116) | 48,359.53 |
| Savings (9225) | 35,000.00 |
| Savings (9925) | 110,529.61 |
| **Total Bank Accounts** | **$68,757.03** |
| Accounts Receivable | |
| 11000 Accounts Receivable | 912,644.14 |
| **Total Accounts Receivable** | **$912,644.14** |
| Other Current Assets | |
| 11040 OFC Clearing | 0.00 |
| 12200 Computer | 290,000.00 |
| 12500 Employee Advance | 7,316.31 |
| Loans to PJ | 1,833,000.00 |
| Undeposited Funds | 1,560.00 |
| **Total Other Current Assets** | **$2,131,876.31** |
| **Total Current Assets** | **$3,113,277.48** |
| Fixed Assets | |
| 15000 Furniture and Equipment | 29,000.00 |
| **Total Fixed Assets** | **$29,000.00** |
| **TOTAL ASSETS** | **$3,142,277.48** |

EXHIBIT 4

# Crownco, Inc

## Balance Sheet

As of May 31, 2024

| | TOTAL |
|---|---|
| **LIABILITIES AND EQUITY** | |
| Liabilities | |
| Current Liabilities | |
| Accounts Payable | |
| 20000 Accounts Payable | 446,027.48 |
| **Total Accounts Payable** | **$446,027.48** |
| Credit Cards | |
| 11025 FC VISA 4173 | 25,077.46 |
| 11026 FC VISA 8423 | 0.00 |
| 11027 FC VISA 0098 | 0.00 |
| 11028 FC 1387 (CLOSED - DO NOT USE) | 0.00 |
| 11029 FC 8267 | 0.00 |
| 11030 FC 1134 | 1.10 |
| 11031 FC 5429 | 0.00 |
| 11032 FC 7652 | 0.00 |
| First Citizen Bank 6068 CC | 0.00 |
| WF -4804 | 5,345.52 |
| **Total Credit Cards** | **$30,424.08** |
| Other Current Liabilities | |
| 21100 Direct Deposit Liabilities | 5.72 |
| 24000 Payroll Liabilities | 110,284.43 |
| 24002 Health Care Liability | -638.75 |
| 24003 401k Liability | 4,185.04 |
| 25001 Loan Due to CM | 4,000.00 |
| 25002 Loan from Officer (CM) | 30,076.54 |
| 25550 PPP Loan | 0.00 |
| **Total Other Current Liabilities** | **$147,912.98** |
| **Total Current Liabilities** | **$624,364.54** |
| Long-Term Liabilities | |
| 26200 Note CenterStone Loan 11207 | 1,400,200.79 |
| 26202 SBA Tresury Loan | 1,823,995.00 |
| 26203 SBA Payroll Loan | 0.00 |
| **Total Long-Term Liabilities** | **$3,224,195.79** |
| **Total Liabilities** | **$3,848,560.33** |
| Equity | |
| 30800 Owners Draw (Mario) | 0.00 |
| 30801 Owner Distribution (Morrison) | -55,150.75 |
| 3200 Opening Balance | 0.00 |
| Owner's Investment | 150,639.55 |
| Owner's Pay & Personal Expenses | 0.00 |
| Retained Earnings | -588,901.45 |

Crownco, Inc

## Balance Sheet

As of May 31, 2024

|  | TOTAL |
| --- | --- |
| Net Income | -212,870.20 |
| **Total Equity** | **$ -706,282.85** |
| **TOTAL LIABILITIES AND EQUITY** | **$3,142,277.48** |

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>ARTURO CISNEROS, solely in his capacity as the Chapter 7 trustee for the bankruptcy estate of Crownco, Inc. | DEFENDANTS<br>PHILLIP JEREMIAH, LLC, a California limited liability company doing business as Precis Solar; and CHARLES MORRISON, an individual |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Melissa Davis Lowe - Bar No. 245521<br>SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>Telephone: (949) 340-3400 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee<br>☐ Creditor      ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee<br>☐ Creditor      ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT FOR: (1) BREACH OF CONTRACT; (2) UNJUST ENRICHMENT; (3) AVOIDANCE AND RECOVERY OF INTENTIONAL FRAUDULENT TRANSFER; (4) AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFER; (5) DISALLOWANCE OF CLAIMS; AND (6) BREACH OF FIDUCIARY DUTY

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(1) – Recovery of Money/Property**
- ☒[1] 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☒[2] 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

Breach of Contract; Unjust Enrichment; Breach of Fiduciary Duty

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Crownco, Inc. | | BANKRUPTCY CASE NO.<br>6:24-bk-16205-MH | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL DISTRICT | | DIVISION OFFICE<br>Riverside | NAME OF JUDGE<br>Hon. Mark Houle |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Melissa Davis Lowe | | | |
| DATE<br><br>September 8, 2025 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Melissa Davis Lowe | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form B1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.